B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (For Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Andrew P. Gunter<br>9011 Willow Brook Drive<br>Henrico, VA 23228 | Leslie Beth Stanford-Tubb<br>4674 Rollingwood Lane<br>Richmond, VA 23060 |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Jason S. Greenwood 74941<br>Greenwood Law Firm PC<br>1406 Princess Anne Street<br>Fredericksburg, VA 22401-3639<br>(540) 368-5888 Fax: (888) 580-8897 | Roy M. Terry, Jr.<br>Sands Anderson PC<br>P.O. Box 1998<br>Richmond, VA 23218-1998 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| [X] Debtor  [ ] U.S. Trustee/Bankruptcy Admin<br>[ ] Creditor  [ ] Other<br>[ ] Trustee | [ ] Debtor  [ ] U.S. Trustee/Bankruptcy Admin<br>[X] Creditor  [ ] Other<br>[ ] Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)

Action to determine dischargeability of Property Settlement Agreement debts pursuant to 11 U.S.C. sec. 523(a)(15) and 11 U.S.C. sec. 1328(a).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ ] 13-Recovery of money/property - §548 fraudulent transfer
[ ] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[X] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
[ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| [ ] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| [ ] Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought: Declaration of the Ch.13 dischargeability of Property Settlement Agreement debts and declaration that said debts are subject to claims treatment as general, unsecured, nonpriority debts.

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>   Andrew P. Gunter | | BANKRUPTCY CASE NO.<br>   13-34737 |
| DISTRICT IN WHICH CASE IS PENDING<br>   Eastern District of Virginia | DIVISION OFFICE<br>   Richmond Division | NAME OF JUDGE<br>   Keith L. Phillips |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br><br> /s/ Jason S. Greenwood<br> Jason S. Greenwood 74941 | | |
| DATE<br>April 29, 2014 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>   Jason S. Greenwood 74941 | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Jason S. Greenwood (VSB No. 74941)
GREENWOOD LAW FIRM PC
1406 Princess Anne Street
Fredericksburg, Virginia 22401
Telephone: (540) 368-5888
Fax: (888) 580-8897

Counsel for Andrew P. Gunter, Plaintiff

## UNITED STATES BANKRUPTCY COURT
### Eastern District of Virginia
### Richmond Division

|  |  |  |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| Andrew P. Gunter | ) | Case No.  13-34737-KLP |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| Andrew P. Gunter | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Adversary Proceeding No. _____ |
| *v.* | ) | |
| | ) | |
| Leslie Beth Stanford-Tubb | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## DEBTOR'S COMPLAINT SEEKING DETERMINATION OF DISCHARGEABILITY PURSUANT TO 11 U.S.C. §§ 1328(a) and 523(a)(15)

**COMES NOW the Debtor / Plaintiff**, Andrew P. Gunter, by counsel, and for his

complaint to determine the dischargeability of the alleged debt to Leslie Beth Stanford-

Tubb, he respectfully represents as follows:

### JURISDICTION & VENUE

1.      Jurisdiction of this Court over the instant adversary proceeding is based upon 28

U.S.C. §§ 157(b) and 1334(b) because this action arises in and relates to the bankruptcy

case of the Debtor, a chapter 13 case, filed in this Court on August 31, 2013 (the "Case" or the "Petition").

2.      This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A),(B) and (I).

3.      Venue is proper in this Honorable Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## THE PARTIES

4.      Plaintiff is natural person, Virginia resident and the Debtor in this case.

5.      Defendant Leslie Beth Stanford-Tubb is a natural person, a Virginia resident, and a party, together with the Plaintiff, to both a Property Settlement Agreement executed in the County of Henrico, Virginia, and a Virginia Divorce Decree issued by the Circuit Court of Henrico County, Virginia.

## BACKGROUND

6.      Plaintiff and Defendant were married on June 11, 1994 in the City of Richmond, Virginia.  (Exhibit 1).

7.      Three children were born to the marriage of Plaintiff and Defendant (the "Children").  (Exhibit 1).

8.      Pursuant to a Bill of Complaint filed in the Circuit Court for Henrico County Virginia (the "Circuit Court"), Defendant, Leslie Beth Stanford-Tubb, sought a divorce from Plaintiff based on the ground that Plaintiff and Defendant had lived separate and apart for a period in excess of one (1) year.  (Exhibit 1).

9.      On January 11, 2011, Defendant was granted an absolute divorce from Plaintiff based on the ground that Plaintiff and Defendant had lived separate and apart for a period in excess of one (1) year (the "Divorce").  (Exhibit 1).

10.     The Circuit Court granted the Divorce by a Final Decree dated January 11, 2011 (the "Divorce Decree").  (Exhibit 1).

11.     Over two (2) years prior to the Divorce, Plaintiff and Defendant entered into a Separation and Property Settlement Agreement (the "PSA") by executing the PSA in the County of Henrico, Virginia, on July 18, 2008.  (Exhibit 2).

12.     The Divorce Decree "affirmed, ratified and incorporated" the "Separation and Property Settlement Agreement dated July 18, 2008" "into [the Divorce Decree]" but did not merge the PSA with the Divorce Decree.  (Exhibit 1).

13.     Upon information and belief, at the time the parties negotiated and executed the PSA, both parties were represented by counsel.  (Exhibit 2).

14.     Upon information and belief, at the time the parties negotiated and executed the PSA, Defendant Leslie Beth Stanford-Tubb's counsel was Edward S. Whitlock III ("Whitlock").  (Exhibit 2).

15.     Upon information and belief, Whitlock drafted the PSA on behalf of Defendant. (Exhibit 2).

16.     The PSA states the following in relevant parts:

>      ## RECITALS
>
>      d. This Agreement is the result of negotiations conducted between the parties and is *intended* to be a disposition of *all of the property and property rights of the parties* ….

…

f. This Agreement is intended to be filed, affirmed, ratified and incorporated into any Decree or Order which may in the future be entered by a Court concerning the marital status or support or marital estate of the parties.

## 5.  **CONCLUSIVENESS OF AGREEMENT**

5c … Husband and Wife acknowledge that this Agreement is a *full and complete settlement of all property rights between them*….

## 6.  **PERMANENT AND TEMPORARY SPOUSAL SUPPORT**

6i … Considering all of Wife's circumstances in light of the above factors, *and considering her reasonable requirements, after first giving due consideration to Wife's ability to provide for her own support and maintenance, Wife agrees not to seek spousal support at this time*.

## 10.  **DIVISION OF REAL PROPERTY**

10a … Husband and Wife covenant that *this Agreement is a full and complete settlement of all property rights between them*.…

…

10d. … [T]he parties herein are owners, as tenants by the entirety with the right of survivorship as at common law, of certain real estate located in the County of Henrico, and briefly described as 3406 Merkner Drive, Glen Allen, Virginia 23060 (hereinafter referred to as the "real estate"). The real estate includes improvements consisting of the marital residence previously occupied by the parties in common.

10e. By execution of this Agreement, Husband hereby agrees that he shall assume and be fully responsible for the payment of the note secured by first deed of trust in the real estate (sic), all real estate taxes assessed thereon, hazard insurance and special assessments, if any, *until the first deed of trust is paid in full*, at which time the Wife agrees that she shall assume and be fully and individually responsible for all real estate taxes and insurance for the real estate, and shall release, indemnify and hold Husband

harmless to all such obligations. ***Husband's payments are
in the nature of property distribution, not spousal support***.

12. **DEBTS AND ACCOUNTS**

12c Wife's student loans. The parties agree that these loans
were incurred as much for the living expenses of the family
as they were for Wife's education. Accordingly, Husband
agrees to pay to Wife, by the first day of each month, the
amount equal to forty percent (40%) of each monthly
payment until this indebtedness is paid in full. ***Husband's
payments are in the nature of property distribution, not
spousal support***.

25. **COMPLETE AGREEMENT**

This Agreement contains the *entire understanding* of the
parties. There are no representations, warranties, covenants
or undertakings other than those expressly set forth herein.

(Exhibit 2 – emphasis added).

17.     The PSA contains no provision or language terminating Plaintiff's obligation to
pay the mortgage (the "Mortgage Debt") on the real estate (the "Real Property") in the
event of the death or remarriage of the Defendant. (Exhibit 2).

18.     The PSA contains no provision or language terminating Plaintiff's obligation to
pay 40% of Defendant's student loans (the "Student Loan Debt") in the event of the death
or remarriage of the Defendant. (Exhibit 2).

19.     The PSA was drafted by an attorney, it is well-structured, and it contains separate
provisions dealing specifically with Child Custody, Child Support, Permanent and
Temporary Spousal Support and Division of Real Property. (Exhibit 2).

20.     The Permanent and Temporary Spousal Support paragraph of the PSA
specifically states that the Plaintiff and the Defendant took the following factors into
consideration prior to arriving at their agreement with regard to spousal support:

a.   "The earning capacity, obligations, needs and financial resources of each other … including income [from different sources]"

b.   The education and training of each other and the ability and opportunity of each to secure such education and training"

c.   "The standard of living established during the marriage"

d.   "The duration of the marriage"

e.   "The age and physical and mental condition of each"

f.   "The contributions, monetary and non-monetary, of each to the well-being of the family"

g.   "The property interests of each …."

h.   "The provisions made with regard to marital property [in the PSA]"

i.   "[O]ther facts, including tax consequences to each …."  (Exhibit 2).

21.    The Defendant was employed full time at the time of the entry of the Divorce Decree and, upon information and belief, the Defendant has remained employed full time up to the present date.

22.    Upon information and belief, Defendant remarried in June 2011.

23.    Upon information and belief, following Defendant's remarriage in June 2011, Defendant and her husband, both of whom were employed, continued to live in the Real Property (with the marital children of the Plaintiff and the Defendant) until well after the Plaintiff filed his Petition on August 31, 2013.

24.     Plaintiff remarried on September 17, 2012.

25.     Following his remarriage, on or about December 1, 2012, Plaintiff and his spouse were forced to move in with Plaintiff's in-laws because they could not afford a stand-alone residence.

26.     After realizing that he could not realistically afford to pay child support, the Mortgage Debt and the Student Loan Debt, in addition to his normal monthly obligations, and prior to filing the Petition, Plaintiff attempted to modify the Mortgage Debt (the "Attempted Modification").

27.     On or about February 28, 2013, the Attempted Modification was denied. (Exhibit 3).

28.     After realizing that he could not realistically afford to pay child support, the Mortgage Debt and the Student Loan Debt, in addition to his normal monthly obligations, and prior to filing the Petition, Plaintiff attempted to negotiate a revised Mortgage Debt payment and/or an arrangement with Defendant for Defendant to take over the Mortgage Debt payment, to take over a portion of the Mortgage Debt payment, and/or to sell the Real Property (the "Attempted Negotiations"). (Exhibit 4).

29.     In April and May 2013, Defendant declined all of the Attempted Negotiations. (Exhibit 4).

30.     Plaintiff continued to pay the Mortgage Debt until filing his Petition.

31.     Plaintiff continued to pay the Student Loan Debt until filing his Petition.

32.    Plaintiff's Child Support payments were up-to-date as of the filing of the Petition (with a small amount of disputed medical bill reimbursement at issue).

33.    As of the date of the Petition, the real estate tax assessed value of the Real Property was approximately $175,700.00, as listed on Debtor's Schedule A of his Petition.  (Exhibit 5).

34.    As of the date of the Petition, the Mortgage Debt balance was approximately $166,483.41.  (Exhibit 6).

35.    Plaintiff listed the Mortgage Debt to Defendant on Schedule F of his Petition and identified the Mortgage Debt as an unsecured, nonpriority debt pursuant to 11 U.S.C. § 523(a)(15).  (Exhibit 7).

36.    Plaintiff's Chapter 13 Plan (the "Plan") treated the Mortgage Debt as an unsecured, nonpriority debt.  (Exhibit 8).

37.    Plaintiff listed the Student Loan Debt to Defendant on Schedule F of his Petition and identified the Student Loan Debt as an unsecured, nonpriority debt pursuant to 11 U.S.C. § 523(a)(15).  (Exhibit 7).

38.    The Plan treated the Student Loan Debt as an unsecured, nonpriority debt. (Exhibit 8).

39.    In paragraph 3B of the Plan, the Plaintiff surrendered the Real Property to the secured lender (Bank of America) "in satisfaction of the secured portion of [that] creditor['s] allowed claims."

40.    Defendant did not object to confirmation of the Plan.

41.     The Plan was confirmed on November 13, 2013.  (Exhibit 9).

42.     On January 8, 2014, Defendant filed proof of claim #6 in the Case (the "Proof of Claim") which listed the Mortgage Debt as a "General Unsecured Claim" in the amount of $182,000.00 and describing the debt as "value of real property lost …."  (Exhibit 10).

43.     The Proof of Claim listed the Student Loan Debt as a "General Unsecured Claim" in the amount of $88,576.84 and describing the debt as "40% of student loans …." (Exhibit 10).

44.     The Proof of Claim alleges a "Priority Claim" in the amount of $73,815.00 and describes the claim as "[h]ousing costs incurred due to Debtor's failure to pay support obligation to provide housing for children until graduating from high school".  (Exhibit 10).

45.     The Proof of Claim alleges a "Priority Claim" in the amount of $6,000.00 and describes the claim as "[a]ttorneys' fees incurred for enforcement of divorce decree in bankruptcy (estimated)".  (Exhibit 10).

46.     Debtor has objected to the Proof of Claim.  (Exhibit 11).

## COUNT I
### Dischargeability of the Mortgage Debt and All Associated Alleged Debts, Fees and Costs Pursuant to 11 U.S.C. § 1328(a) and 11 U.S.C. § 523(a)(15)

47.     The allegations set forth in paragraphs 1 through 46 above are incorporated herein by reference.

48.     Plaintiff's obligation to pay the Mortgage Debt on the Real Property is a debt:

    a.   To a Former Spouse;

      b.   **_Not_** in the nature of alimony, maintenance or support;

      c.   That was established before the filing of Debtor Plaintiff's Bankruptcy Petition and the order for relief in Debtor's Case;

      d.   That was incurred by the Debtor Plaintiff in the course of divorce;

      e.   That was incurred by the Debtor Plaintiff in connection with a Property Settlement Agreement and Divorce Decree; and

      f.   That was incurred by the Debtor Plaintiff in connection with an Order of the Henrico County Circuit Court of the Commonwealth of Virginia pursuant to applicable nonbankruptcy law.

49.    The Mortgage Debt is not a Domestic Support Obligation, pursuant to 11 U.S.C. § 523(a)(5), as that term is defined at 11 U.S.C. 101(14A) ("Domestic Support Obligation).

50.    The Mortgage Debt is a general, unsecured, nonpriority debt pursuant to 11 U.S.C. § 523(a)(15).

51.    In accordance with 11 U.S.C. § 1328(a), because the Mortgage Debt is a general, unsecured, nonpriority debt, pursuant to 11 U.S.C. § 523(a)(15), it is dischargeable upon Debtor Plaintiff's successful completion of all payments required by his confirmed Chapter 13 Plan.

52.    Because the Mortgage Debt is dischargeable pursuant to 11 U.S.C. § 1328(a), any and all alleged debts related to the nonpayment of the Mortgage Debt and/or any and all debts based on theories of indemnification, restitution or repayment of the Defendant due to the Plaintiff's nonpayment of the Mortgage Debt are similarly dischargeable.

53.     Because the Mortgage Debt is not a Domestic Support Obligation and because the Mortgage Debt is dischargeable pursuant to 11 U.S.C. § 1328(a), any and all alleged attorneys' fees and/or costs related to the "enforcement" of the Mortgage Debt and/or any and all debts based on theories of indemnification, restitution or repayment of the Defendant due to the Plaintiff's nonpayment of the Mortgage Debt are similarly dischargeable.

## COUNT II
### Dischargeability of the Student Loan Debt Pursuant to 11 U.S.C. § 1328(a) and 11 U.S.C. § 523(a)(15)

54.     The allegations set forth in paragraphs 1 through 53 above are incorporated herein by reference..

55.     Plaintiff's obligation to pay the Student Loan Debt is a debt:

        a.    To a Former Spouse;

        b.    *__Not__* in the nature of alimony, maintenance or support;

        c.    That was established before the filing of Debtor Plaintiff's Bankruptcy Petition and the order for relief in Debtor's Case;

        d.    That was incurred by the Debtor Plaintiff in the course of divorce;

        e.    That was incurred by the Debtor Plaintiff in connection with a Property Settlement Agreement and Divorce Decree; and

        f.    That was incurred by the Debtor Plaintiff in connection with an Order of the Henrico County Circuit Court of the Commonwealth of Virginia pursuant to applicable nonbankruptcy law.

56.    The Student Loan Debt is not a Domestic Support Obligation pursuant to 11 U.S.C. § 523(a)(5).

57.    The Student Loan Debt is a general, unsecured, nonpriority debt pursuant to 11 U.S.C. § 523(a)(15).

58.    In accordance with 11 U.S.C. § 1328(a), because the Student Loan Debt is a general, unsecured, nonpriority debt, pursuant to 11 U.S.C. § 523(a)(15), it is dischargeable upon Debtor Plaintiff's successful completion of all payments required by his confirmed Chapter 13 Plan..

WHEREFORE, PLAINTIFF respectfully prays that this Court enter an Order:

A.    Declaring that the Mortgage Debt is not in the nature of alimony, maintenance, or support to Plaintiff's former spouse, Leslie Beth Stanford-Tubb, and therefore not a "Domestic Support Obligation" pursuant to 11 U.S.C. § 523(a)(5) as that term is defined at 11 U.S.C. 101(14A);

B.    Declaring that the Mortgage Debt is a debt to a former spouse of the Debtor of the type identified in 11 U.S.C. § 523(a)(15);

C.    Declaring that, because the Mortgage Debt is a debt of the type identified in 11 U.S.C. § 523(a)(15), the Mortgage Debt is dischargeable in the lead case pursuant to 11 U.S.C. §1328(a), upon Debtor's successful completion of all Plan payments and upon entry of the Debtor's discharge;

D.    Declaring that, because the Mortgage Debt is dischargeable pursuant to 11 U.S.C. §1328(a), all associated alleged debts related to the Mortgage Debt are dischargeable, including but not limited to, moving and housing costs, attorneys' fees and costs, "value of real property lost" and other theories of indemnification, restitution or repayment

E.    Declaring that, during the pendency of this case under chapter 13 and for the purposes of Debtor's Chapter 13 Plan, the Mortgage Debt shall be characterized as general, unsecured, nonpriority debt;

F.    Declaring that the Student Loan Debt is not in the nature of alimony, maintenance, or support to Plaintiff's former spouse, Leslie Beth Stanford-Tubb, and therefore not a "Domestic Support Obligation" pursuant to 11 U.S.C. § 523(a)(5) as that term is defined at 11 U.S.C. 101(14A);

G.      Declaring that the Student Loan Debt is a debt to a former spouse of the Debtor of the type identified in 11 U.S.C. § 523(a)(15);

H.      Declaring that, because the Student Loan Debt is a debt of the type identified in 11 U.S.C. § 523(a)(15), the Student Loan Debt is dischargeable in the lead case pursuant to 11 U.S.C. §1328(a), upon Debtor's successful completion of all Plan payments and upon entry of the Debtor's discharge;

I.      Declaring that, during the pendency of this case under chapter 13 and for the purposes of Debtor's Chapter 13 Plan, the Student Loan Debt shall be characterized as general, unsecured, nonpriority debt;

J.      Awarding Plaintiff reasonable attorney's fees and costs associated with the prosecution of this action before this Honorable Court, as appropriate; and

K.      Awarding Plaintiff such other and further relief as is just.


Respectfully Submitted,

ANDREW P. GUNTER

By Counsel




By: /s/ Jason S. Greenwood
Jason S. Greenwood (VSB #74941)
GREENWOOD LAW FIRM PC
1406 Princess Anne Street
Fredericksburg, VA 22401-3639
Tel. (540) 368-5888
Fax. (888) 580-8897
j.greenwood.@greenwoodlf.com
*Counsel for Plaintiff*

# EXHIBIT 1

VIRGINIA:

IN THE CIRCUIT COURT OF THE COUNTY OF HENRICO

LESLIE BETH STANFORD GUNTER,          )
                                       )
        Plaintiff                      )
                                       )
v.                                     )        Case No. CL09-2695
                                       )
ANDREW PRATT GUNTER,                   )
                                       )
        Defendant.                     )

### FINAL DECREE

This cause, which has been regularly matured, docketed, and set for hearing, came on this day to be heard upon Plaintiff's Complaint; upon proof of proper and legal service of process upon Defendant; upon an Answer and Cross-Complaint filed on behalf of the Defendant; upon depositions of Plaintiff and witnesses, taken <u>ore tenus</u>, on December 13, 2010; upon a Motion for Show Cause Order filed by Plaintiff; upon an Order appointing a Guardian <u>ad litem</u>; and was argued by counsel.

Upon consideration whereof, the Court finds from the evidence, independently of the admission of the parties in the pleadings or otherwise, the following facts: that the parties hereto are over the age of eighteen (18) years and of sound mind; that neither of the parties is a member of the Armed Forces; that the parties were lawfully married in Richmond, Virginia, on June 11, 1994; that there were three children born of the marriage, namely ███████

████████████████████████████████████████

████████████████████████████ that the parties are domiciled in, and are actual bona fide residents of, the Commonwealth of Virginia, and have been so for a period of more than one (1) year immediately preceding the commencement of this suit; that the parties last

LAFAYETTE, AYERS & WHITLOCK, PLC
CROSSRIDGE PROFESSIONAL PARK
10160 STAPLES MILL ROAD, SUITE 105
GLEN ALLEN, VA 23060
(804) 545-6250 • FAX (804) 545-6259

cohabited as husband and wife in the County of Henrico, at 3406 Merkner Drive, Glen Allen, Virginia 23060; that the parties separated on or about June 19, 2008 and then again on September 15, 2008 after having reconciled from the first separation; that the parties separated with him and her having their own separate residence; that it was the intent of the parties to permanently separate at the time of separation; that the parties have lived separate and apart without any cohabitation and without interruption for more than one (1) year, as alleged in the Complaint, has been fully proven by the evidence; that the terms of the Separation and Property Settlement Agreement dated July 18, 2008 be affirmed, ratified and incorporated into this Order; and that Plaintiff is entitled to the relief prayed for.

Accordingly, it is ADJUDGED, ORDERED, and DECREED that Plaintiff, Leslie Beth Stanford Gunter, be, and hereby is, absolutely divorced from Defendant, Andrew Pratt Gunter, from the bond of matrimony on the ground that the parties have lived separate and apart without any cohabitation and without interruption for a period of more than one (1) year, and that the bond of matrimony created by the marriage between the parties on June 11, 1994 be, and hereby is, dissolved.

It is further ORDERED that the Property Settlement Agreement dated July 18, 2008 be affirmed, ratified and incorporated into this Order.

It is further ORDERED that Child Custody shall be amended from the Property Settlement Agreement dated July 18, 2008 as follows:

## 1.   **CHILD CUSTODY**

**1a.**   The parties will share joint legal custody of the children, with sole physical custody to Plaintiff.

**1b.**   It is expressly understood that the welfare of ▇▇▇▇▇▇▇▇▇▇

(hereinafter "the children"), who are under the age of eighteen (18) years, shall be the major criterion in all determinations concerning their custody and visitation. Based on these considerations, the parties agree that they will share joint legal custody of the children, with sole physical custody to Wife. However, consistent with the intent of the parties to foster the relationship of the children with both parties and to maximize the contact between the children and the noncustodial parent, the parties agree that Husband shall have the right to see and visit with the children at reasonable times and at reasonable places, at the mutual convenience of the parties hereto. This specific agreement as to visitation shall be liberally construed.

Concerning all matters of importance relating to the health, education, and welfare of the children, the parties shall confer with a view toward adopting and following a harmonious policy.

Each party shall give the other reasonable notice of the date, time, and location of scheduled events in which the children are participating or which relate to the children, such as sports activities, school programs, parent-teacher conferences, etc., in order to afford both parents the opportunity of attending and taking part in such events.

The parties shall promptly notify the other in the event of accidental injury to, or illness of, the children. The word "illness" as used herein shall mean any illness which confines the child to bed for more than two (2) days or requires medical attention.

The parties shall put no obstacle in the way of maintenance of love and affection for the children and each of them, nor shall either party do anything to estrange the children from the other party.

**1c.**    Prior to any relocation, each party shall give the other thirty (30) days notice of his or her plans to relocate outside of the Commonwealth of Virginia.

**1d.** Defendant shall have liberal visitation, which includes the following:

(1) Weekends: Every other weekend from 5:00 p.m. on Friday to 5:00 p.m. Sunday, beginning July 18, 2008.

(2) Thursdays: Every Thursday, beginning at 5:00 p.m., and ending at 10:00 a.m. on Friday when Defendant does not have visitation for the weekend, through the weekend when the Defendant does have visitation for the weekend.

(3) Thanksgiving: Regardless of any other visitation set forth above, Plaintiff shall have the children on Thanksgiving Day until 5:00 p.m.

(4) Christmas: Regardless of any other visitation set forth above, Plaintiff shall have the children from 5:00 p.m. on Christmas Eve through noon on Christmas Day, and Defendant shall have the children from noon until 6:00 p.m. on Christmas Day. Otherwise, the parties agree to split the Christmas school holiday.

(5) Easter: Regardless of any other visitation set forth above, Plaintiff shall have the children from 5:00 p.m. on Easter Eve through noon on Easter Day.

(6) Mother's Day / Father's Day: Regardless of any other visitation set forth above, Plaintiff shall have the children from 9:00 a.m. to 5:00 p.m. on Mother's Day, and Defendant shall have the children from 9:00 a.m. to 5:00 p.m. on Father's Day.

(7) Children's Birthdays: Regardless of any other visitation set forth above, Plaintiff shall have the children for purposes of having the children's birthday party on the children's birthday, at a location of Plaintiff's choice, for a period of time up to three hours as chosen by Plaintiff.

(8) Summer: Regardless of any other visitation set forth above, Defendant shall have two weeks of visitation with the children during the summer. However, these two weeks

shall not be the first full week after the children's school year is completed, nor shall it be the week immediate prior to the commencement of the children's school year, nor shall it be the week of Virginia's birthday. In order for Defendant to receive his first choice of weeks, Defendant must notify Plaintiff, in writing, of these weeks no later than March 30 of each year. Similarly, Plaintiff may have two weeks of un-interrupted visitation with the children in the summer. Plaintiff will notify Defendant of her choices by April 15 of each year.

(9) Other times: Such other visitation with the children at times as the parties may mutually agree.

**1e.** ▮▮▮▮▮▮▮▮▮▮ shall not be in the presence of the children or have any contact with the children, unless and until she marries Andrew Pratt Gunter. If a marriage date is set between Andrew Pratt Gunter and ▮▮▮▮▮▮▮ then the children's counselor shall determine if, when and how ▮▮▮ will be introduced to the children prior to the marriage. "In the presence of the children" shall include the property boundaries of Husband's primary residence. Husband shall not take the children to the residence of ▮▮▮ ▮▮▮ or her friends or relatives.

**1f.** All exchanges of the children will occur at Mother's residence. Husband will not enter the house nor will he enter or remain on the property longer than necessary to accomplish a pick up or drop off.

**1g.** Neither party will disparage the other in the presence of the children, nor will any matter be discussed in the presence of the children not related to health and welfare issues, emergencies excluded.

It is further ORDERED, pursuant to Section 20-60.3 of the Code of Virginia, as amended, that:

1. That Plaintiff, Leslie Beth Stanford Gunter, whose social security number is █████, whose driver's license number is █████, was born on █████, █████, currently resides at 3406 Merkner Drive, Glen Allen, Virginia 23060; home phone number: █████ and is employed by Henrico County Public Schools, P.O. Box 90775, Henrico, Virginia 23273, work phone number: █████.

2. That Defendant, Andrew Pratt Gunter, whose social security number is █████, whose driver's license number is █████, was born on █████, █████ currently resides at █████, home phone number █████, and is employed by Henrico County Public Schools, P.O. Box 90775, Henrico, Virginia 23273, work phone number: █████.

3. That Plaintiff and Defendant to this suit have a duty of support to █████ ("the children").

4. The Defendant shall pay to Plaintiff One Thousand Six Hundred Fifty-five and 00/100 Dollars ($1,655.00) per month for the children, beginning January 1, 2011 and continuing thereafter on or before the first (1st) day of each succeeding month.

5. Plaintiff shall maintain adequate health insurance coverage for the children, so long as Plaintiff is able to. The medical insurance for the children is currently through █████, identification number: █████

6. Cash medical support, as defined in §63.2-1900, shall be paid by Plaintiff in a forty-five percent (45%) proportion and Defendant in a fifty percent (55%) proportion for all medical and dental bills for the child that are not covered by insurance.

7. Plaintiff and Defendant shall carry their own respective health insurance.

8. Support payments may be withheld as they become due pursuant to §20-79.1 or §20-79.2, from income as defined in §63.2-1900, without further amendments of this Order or having to file an application for services with the Department of Social Services.

9. Support payments may be withheld pursuant to Chapter 19 (§63.2-1900 et seq.) of Title 63.2 without further amendments to the Order upon application for services with the Department of Social Services.

10. Pursuant to §20-124.2, support will continue to be paid for any child over the age of eighteen (18) who is (i) a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the party seeking or receiving child support until such child reaches the age of nineteen (19) or graduates from high school, whichever occurs first, and that the Court may also order the continuation of support for any child over the age of eighteen (18) who is (a) severely and permanently mentally or physically disabled, (b) unable to live independently and support himself, and (c) residing in the home of the parent seeking or receiving child support.

11. In determination of a support obligation, the support obligation as it becomes due and unpaid creates a judgment by operation of law. Pursuant to §20-78.2, for

interest on the arrearage at the judgment rate as established by §6.1-330.54 unless

the obligee, in a writing submitted to the Court, waives the collection of interest.

12. A petition may be filed for suspension of any license, certificate, registration or

other authorization to engage in a profession, trade, business, occupation or

recreational activity issued by the Commonwealth to a parent as provided in §63.2-

1937 upon a delinquency for a period of ninety (90) days or more or in an amount

of Five Thousand and 00/100 Dollars ($5,000.00) or more. The Plaintiff holds a

Virginia Department of Education and Henrico County Public office teaching

certificate authorization and Defendant holds a Virginia Department of Education

and Henrico County Public office teaching certificate authorization.

13. On or after July 1, 1994, the Department of Social Services may, pursuant to

Chapter 19 (§63.2-1900 et seq.) of Title 63.2 and in accordance with §§20-108.2

and 63.2-1921, initiate a review of the amount of support ordered by any Court.

14. If any arrearages for child support, including interest or fees, exist at the time the

youngest child included in this Order emancipates, payments shall continue in the

total amount due (current support plus amount applied toward arrearages) at the

time of emancipation until all arrearages are paid.

15. In cases enforced by the Department of Social Services, the Department of Motor

Vehicles may suspend or refuse to renew the driver's license of any person upon

receipt of notice from the Department of Social Services that the person (i) is

delinquent in the payment of child support by 90 days or in an amount of $5,000 or

more or (ii) has failed to comply with a subpoena, summons, or warrant relating to

paternity or child support proceedings.

16. If child support payments are ordered to be paid through the Department of Social Services or directly to the obligee, and unless the court for good cause shown orders otherwise, the parties shall give each other and the court, and, when payments are to be made through the Department, the Department of Social Services at least 30 days' written notice, in advance, of any change of address and any change of telephone number within 30 days after the change;

17. If child support payments are ordered to be paid through the Department of Social Services, the obligor is required to keep the Department of Social Services informed of the name, address and telephone number of his current employer, or if payments are ordered to be paid directly to the obligee, the obligor is to keep the court informed of the name, address and telephone number of his current employer.

18. If child support payments are ordered to be paid through the Department of Social Services, the party obligated to provide health care coverage is to keep the Department of Social Services informed of any changes in the availability of the health care coverage for the minor child or children, or if payments are ordered to be paid directly to the obligee, the party obligated to provide health care coverage is to keep the other party informed of any changes in the availability of the health care coverage for the minor child or children.

19. There are currently no child support arrearages.

It is further ORDERED that the Plaintiff shall resume the use of her maiden name, Leslie Beth Stanford.

It is further ORDERED that Andrew Pratt Gunter shall pay the bill of the Guardian <u>ad litem</u>, in the amount of <u>Two thousand five hundred dollars</u> ($ 2,500 ),   which

shall constitute a money judgment.

It is further ORDERED that Andrew Pratt Gunter shall pay Ten Thousand and 00/100

Dollars ($10,000.00) in attorney's fees to counsel for Plaintiff, which shall constitute a money

judgment.

It is further ORDERED that all matters pertaining to the care, custody, visitation, and

support of the minor children of the parties be, and hereby are, transferred to the Henrico

County Juvenile and Domestic Relations District Court.

This matter shall remain open and on the Court's active docket for a period of one

hundred twenty (120) days for the sole purpose of entering a QDRO or an ADRO, whichever

is necessary.

ENTER: / , // , //

_____
JUDGE

I ask for this:

_____
Edward S. Whitlock, III, Esquire
VSB Number: 27811
Lafayette, Ayers & Whitlock, PLC
10160 Staples Mill Road, Suite 105
Glen Allen, Virginia 23060
Telephone (804) 545-6250
Facsimile (804) 545-6259
Counsel for Plaintiff

A COPY TESTE:
YVONNE G. SMITH, CLERK
_____
DEPUTY CLERK

Seen and objected to as to attorney's fees: *awarded to Plaintiff*

Dawn Bonham DeBoer, Esquire
VSB Number: 26554
Locke Partin DeBoer & Quinn
P.O. Box 11708
Richmond, Virginia 23230
Telephone: (804) 545-9412
Facsimile: (804) 545-9411
Counsel for Defendant

Seen:

Donna D. Berkeley, Esquire
VSB Number: 36522
"Courthouse Commons"
4114 East Parham Road
Richmond, Virginia 23228-2748
Telephone: (804) 755-4461
Facsimile: (804) 755-6606
Guardian ad litem

# EXHIBIT 2

# SEPARATION AND
# PROPERTY SETTLEMENT AGREEMENT

THIS AGREEMENT is made this 15th day of July, 2008, by and between Andrew Pratt Gunter, of Henrico County, Virginia, (hereinafter referred to as "Husband"), and Leslie Beth Stanford Gunter, of Henrico County, Virginia, (hereinafter referred to as "Wife"). Husband and Wife are sometimes collectively hereinafter referred to as "the parties".

## RECITALS

**a.**    The parties hereto were lawfully married on June 11, 1994, in Richmond, Virginia, thereafter cohabitating together as husband and wife.

**b.**    Differences have arisen between the parties causing them to cease cohabitation as husband and wife and separate on or about June 19, 2008, each establishing his or her own separate residence, and having the intent at the time of their separation to remain permanently apart.

**c.**    There were three (3) children born of the parties' marriage, namely ███████

███████████████████████████████████████████████████████

███████████████████

**d.**    This Agreement is the result of negotiations conducted between the parties and is intended to be a disposition of all of the property and property rights of the parties, and all of the marital obligations arising out of the marital relationship.

**e.**    Husband and Wife recognize that each has certain rights and obligations arising from their marital relationship, which rights and obligations the parties desire to settle by mutual agreement.

**f.** This Agreement is intended to be filed, affirmed, ratified and incorporated into any Decree or Order which may in the future be entered by a Court concerning the marital status or support or marital estate of the parties.

**g.** This Agreement is entered into voluntarily by the parties, after due and considered deliberation, and each party represents that consent to the execution of this Agreement has not been obtained by duress, fraud or undue influence of any person, and no representations of fact or otherwise have been made by either party to the other except as herein expressly set forth, each party having been fully advised of the financial and personal status of the other and of his or her own rights by independent counsel, and each party considers the terms of this Agreement to be just and equitable, and acknowledges it is executed for valuable and sufficient consideration.

## WITNESSETH:

NOW, THEREFORE, in consideration of the mutual undertakings, releases and agreements described below, the parties agree as follows:

**1.** **CHILD CUSTODY**

**1a.** The parties acknowledge that their marital differences in no way alter their affection for their children, and that nothing contained herein shall constitute an abandonment of the children by either party.

**1b.** It is expressly understood that the welfare of ████████████ hereinafter "the children"), who are under the age of eighteen (18) years, shall be the major criterion in all determinations concerning their custody and visitation. Based on these considerations, the parties agree that they will share joint legal custody of the children, with sole physical custody to Wife. However, consistent with the intent of the parties to foster the relationship of the children with both

parties and to maximize the contact between the children and the noncustodial parent, the parties agree that Husband shall have the right to see and visit with the children at reasonable times and at reasonable places, at the mutual convenience of the parties hereto. This specific agreement as to visitation shall be liberally construed.

Concerning all matters of importance relating to the health, education, and welfare of the children, the parties shall confer with a view toward adopting and following a harmonious policy.

Each party shall give the other reasonable notice of the date, time, and location of scheduled events in which the children are participating or which relate to the children, such as sports activities, school programs, parent-teacher conferences, etc., in order to afford both parents the opportunity of attending and taking part in such events.

The parties shall promptly notify the other in the event of accidental injury to, or illness of, the children. The word "illness" as used herein shall mean any illness which confines the child to bed for more than two (2) days or requires medical attention.

The parties shall put no obstacle in the way of maintenance of love and affection for the children and each of them, nor shall either party do anything to estrange the children from the other party.

**1c.**    Prior to any relocation, each party shall give the other thirty (30) days notice of his or her plans to relocate outside of the Commonwealth of Virginia.

**1d.**    Husband shall have liberal visitation (subject to Husband continuing his weekly counseling with ███████████████████████████████████████ with Wife having full access to records of the same), which includes the following:

(1)    Weekends:  Every other weekend from 5:00 p.m. on Friday to 5:00 p.m.

Page 3 of 21 Pages

Sunday, beginning July 18, 2008.

(2)  Thursdays:  Every Thursday, beginning at 5:00 p.m., and ending at 10:00 a.m. on Friday when Husband does not have visitation for the weekend, through the weekend when the Husband does have visitation for the weekend.

(3)  Thanksgiving: Regardless of any other visitation set forth above, Wife shall have the children on Thanksgiving Day until 5:00 p.m.

(4)  Christmas: Regardless of any other visitation set forth above, Wife shall have the children from 5:00 p.m. on Christmas Eve through noon on Christmas Day, and Husband shall have the children from noon until 6:00 p.m. on Christmas Day.

(5)  Easter:  Regardless of any other visitation set forth above, Wife shall have the children from 5:00 p.m. on Easter Eve through noon on Easter Day.

(6)  Mother's Day / Father's Day:  Regardless of any other visitation set forth above, Wife shall have the children from 9:00 a.m. to 5:00 p.m. on Mother's Day, and Husband shall have the children from 9:00 a.m. to 5:00 p.m. on Father's Day.

(7)  Children's Birthdays: Regardless of any other visitation set forth above, Wife shall have the children for purposes of having the children's birthday party on the children's birthday, at a location of Wife's choice, for a period of time up to three hours as chosen by Wife.

(8)  Summer: Regardless of any other visitation set forth above, Husband shall have two weeks of visitation with the children during the summer. However, these two weeks shall not be the first full week after the children's school year is completed, nor shall it be the week immediate prior to the commencement of the children's school year, nor shall it be the week of Virginia's birthday. In order for Husband to receive his first choice of weeks, Husband must notify

Page 4 of 21 Pages

Wife, in writing, of these weeks no later than March 30 of each year. Similarly, Wife may have two weeks of un-interrupted visitation with the children in the summer. Wife will notify Husband of her choices by April 15 of each year.

(9) Other times: Such other visitation with the children at times as the parties may mutually agree.

## 2.   CHILD SUPPORT

**2a.**   **Amount -** Husband hereby agrees to pay to Wife, solely for the benefit of the children, the sum of One Thousand One Hundred Thirty Eight and 00/100 Dollars ($1,138.00), per month, commencing on the 1st day of August, 2008, and continuing thereafter on or before the first day of each succeeding month thereafter. The parties recognize that this amount was determined based upon Wife having an annual of $40,000.00, although she is not yet employed. Should Wife be unable to obtain employment at this level, then the parties will recalculate the support obligation based upon Va. Code Ann. §§ 20-108.1 and 20-108.2. A copy of the current child support calculation worksheet is attached hereto.

~~In addition to child support, Husband shall pay all costs for the children's day care.~~

The parties hereby acknowledge that the Husband's child support obligation is subject to modification and further agree that Va. Code Ann. §§ 20-108.1 and 20-108.2 shall be used as a guideline for determining future increases or reduction of the child support obligation.

**2b.**   **Duration -** So long as the children shall reside and live with Wife, support payments for each child shall continue until each child reaches the age of eighteen (18) years or graduates from high school, whichever shall later occur.

**2c.**   **Medical Insurance -** Husband agrees to maintain in full force and effect an

adequate hospitalization and major medical insurance policy for the children (and for Wife as long as he can), and, additionally, to pay all non-covered medical, and dental and vision expenses, for so long as each child is a dependent as defined by Husband's insurance policy.

    **2d.**   **Life Insurance** - Husband agrees to maintain the two existing life insurance policies with the children as the beneficiaries on the policies, and Wife as trustee for the children, and Husband further agrees to maintain the policies in full force and effect until the parties' youngest child attains the age of twenty-one (21) years of age.

    **2e.**   **College Education** - It is the desire of both parties that the children have the opportunity of attending the college of their choice. Husband hereby agrees to pay the cost of tuition, books and other expenses reasonably associated with a college education for the children.

    **3.**   **DISCOVERY NOT TO BE USED BECAUSE OF COST**

    Husband and Wife acknowledge that this Agreement was negotiated and entered into based on each other's own personal knowledge and access to the other's books, records, and files with little or no use of any of the discovery procedures available under the law because of the cost involved. Husband and Wife further agree that each has considered the discovery procedures available, such as written questions to the other party, sworn statements which may be obtained from witnesses, including the other party, and the availability of process to summons written papers. The parties have weighed the potential value of the information which might be obtained with the cost necessary to obtain such information and concluded that use of such discovery procedures are too costly and, therefore, have elected not to use such procedures. However, Wife has relied upon Husband's disclosure of assets as follows:

    a.  Drefus Premier Technology Growth Fund – Class A, ▓▓▓▓▓▓▓▓

with a market value of $547.22 as of 6/30/08.

b. DWS Scudder Funds, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ with a market value not revealed to Wife.

c. Oppenheimer Quest Opportunity Value Fund Class A, ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇, with a market value of $2,717.94 as of 9/30/07; no current market value was revealed to Wife.

Should it later be determined that Husband had other assets or greater values that he failed to disclose, Wife shall be entitled to seek a marital interest in these assets, and, Husband shall be liable to Wife for all of her costs and attorney's fees associated with the pursuit of her interest.

### 4.    VALUATION

Husband and Wife acknowledge that the usual and customary method of determining fair value is to employ a competent individual trained in valuation techniques and that they have been advised that the surest way of determining value is to hire such an individual for appraisal of the property dealt with in this Agreement. Notwithstanding the foregoing and subject to the terms and conditions contained herein, Husband and Wife have elected to agree on values or equities without employment of an appraiser in order to save costs.

### 5.    CONCLUSIVENESS OF AGREEMENT

**5a.**    Husband and Wife agree that the terms "separate property" and "marital property" have been fully explained to each of them.

**5b.**    Husband and Wife further understand that, for the purposes of achieving an equitable distribution of marital property, both parties are deemed to have rights and interests in the marital property.

Page 7 of 21 Pages

**5c.**     With the foregoing in mind, Husband and Wife acknowledge that this Agreement is a full and complete settlement of all property rights between them, and from the time of execution of this Agreement, neither Husband nor Wife shall have any interest of any kind or nature whatsoever in or to any of the marital property of the parties or the property of the other except as provided in this Agreement.

### 6.     PERMANENT AND TEMPORARY SPOUSAL SUPPORT

Husband and Wife agree that in arriving at their decisions on permanent spousal support and maintenance, they have considered, among others, the following factors:

**a.**     The earning capacity, obligations, needs and financial resources of each other, including but not limited to income from pension, profit sharing and/or retirement plans, of whatever nature, if any;

**b.**     The education and training of each other and the ability and opportunity of each to secure such education and training;

**c.**     The standard of living established during the marriage;

**d.**     The duration of the marriage;

**e.**     The age and physical and mental condition of each;

**f.**     The contributions, monetary and non-monetary, of each to the well-being of the family;

**g.**     The property interests of each, both real and personal, tangible and intangible;

**h.**     The provisions made with regard to marital property herein; and

**i.**     Such other facts, including the tax consequences to each as are necessary to consider the equities between them.

Page 8 of 21 Pages

Husband acknowledges that his anticipated income will provide for his support and maintenance, and considering the above factors, his means are sufficient to provide for his own needs.   HUSBAND, THEREFORE, WAIVES ALL CLAIMS TO SUPPORT AND MAINTENANCE FOR HIMSELF AND HEREBY RELEASES AND DISCHARGES WIFE ABSOLUTELY AND FOREVER, FROM ANY AND ALL CLAIMS AND DEMANDS, PAST, PRESENT OR FUTURE, FOR SUPPORT AND MAINTENANCE, BOTH PERIODIC AND LUMP SUM, EXCEPT AS SPECIFICALLY PROVIDED OTHERWISE BY THIS AGREEMENT.

Considering all of Wife's circumstances in light of the above factors, and considering her reasonable requirements, after first giving due consideration to Wife's ability to provide for her own support and maintenance, Wife agrees not to seek spousal support at this time.

The above spousal support provisions are a stipulation according to Virginia law (refer to Code Section 20-109, et. seq.).

## 7.   PENSION PLAN

Husband further agrees to convey fifty percent (50%) (valued as of the date of this agreement) of Husband's interest in his pension, profit sharing and retirement incomes to Wife, by Quadro if necessary.

## 8.   TAX CONSEQUENCES

Husband and Wife acknowledge that they have been advised that the most appropriate method for determining the tax consequences of this Agreement to each individual is to provide his or her tax advisor with a copy of this Agreement and to request advice, counsel and criticism.   In keeping with the foregoing, Husband and Wife each warrant and acknowledge that he or she has

provided or though having had the opportunity, have chosen not to provide, his or her tax advisor

(other than his or her counsel herein) with a copy of this Agreement before execution, and having

received or had the opportunity to receive the advice, counsel, and criticism of such tax advisor, is

satisfied, and assumes full, complete, and exclusive responsibility for all tax consequences to him

or her arising from this Agreement.

## 9.   DIVISION OF PROPERTY CONSIDERATIONS

Husband and Wife agree the following factors have been considered by each of them in

arriving at their agreement on how to distribute marital property.

**a.**   Contributions, monetary and non-monetary, of each party to the well-being of the

family;

**b.**   The contributions, monetary and non-monetary, of each party in the acquisition and

care and maintenance of such marital property of the parties;

**c.**   The duration of the marriage;

**d.**   The ages and physical and mental conditions of the parties;

**e.**   The circumstances and factors which have and will contribute to the dissolution of

the marriage;

**f.**   How and when specific items of such marital property were acquired;

**g.**   The debts and liabilities of each spouse, the basis for such debts and liabilities, and

the property which may serve as security for such debts and liabilities;

**h.**   The liquid or non-liquid character of all marital property;

**i.**   The tax consequences to each party;

**j.**   The present value of pension, profit-sharing or

deferred compensation plans or retirement benefits, whether vested or non-vested; and

**k.**     Such other factors as the parties deem necessary or appropriate to consider in order to arrive at a fair and equitable distribution of their marital property.

**l.**     Such other factors as the parties deem necessary or appropriate to consider in order to arrive at a FAIR and EQUITABLE distribution of marital property.

## 10.     DIVISION OF REAL PROPERTY

**10a.**     By execution of this Agreement, Husband and Wife each warrant that they have read and understand the definitions of "separate property" and "marital property", the same being set forth in the following subparagraphs of this Agreement and each understands that for purposes of achieving an equitable distribution of marital property, both parties are deemed to have rights and interests in the parties' marital property.

With these understandings in mind, Husband and Wife covenant that this Agreement is a full and complete settlement of all property rights between them.  From the date of execution of this Agreement, neither Husband nor Wife ever have any interest of any kind or nature whatsoever in or to any of the marital property of the parties or the separate property of the other except as provided in this Agreement.

**10b.**     Husband and Wife understand that "separate property" is generally defined, and for purposes of this Agreement shall be defined, as (i) all property, real, and personal individually acquired by either party prior to the date of the parties' marriage, (ii) all property individually acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party, provided such property was intended by the donor or grantor for the individual benefit of the party receiving same, (iii) all property acquired during the marriage in exchange for or

from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property, (iv) the increase in value of separate property during the marriage is separate property, unless marital property or the personal efforts of either party have contributed to such increases and then only to the extent of the increases in value attributable to such contributions. The personal efforts of either party must be significant and result in substantial appreciation of the separate property if any increase in value attribution thereto is to be considered marital property, (v) such other factors as outlined in Va. Code Ann. § 20-107.3 which the parties have been made aware or have had the opportunity to have explained to them.

**10c.** Husband and Wife understand that "marital property" is generally defined, and for purposes of this Agreement shall be defined, as all property, real and personal, which has been acquired by the parties during their marriage and which does not constitute separate property of either party as defined herein.

**10d.** As of the date of the execution of this Agreement, the parties herein are owners, as tenants by the entirety with the right of survivorship as at common law, of certain real estate located in the County of Henrico, and briefly described as 3406 Merkner Drive, Glen Allen, Virginia 23060 (hereinafter referred to as "the real estate"). The real estate includes improvements consisting of the marital residence previously occupied by the parties in common.

**10e.** By execution of this Agreement, Husband hereby agrees that he shall assume and be fully responsible for the payment of the note secured by first deed of trust in the real estate, all real estate taxes assessed thereon, hazard insurance and special assessments, if any, until the first deed of trust is paid in full, at which time the Wife agrees that she shall assume and be fully and individually responsible for all real estate taxes and insurance for the real estate, and shall release,

indemnify and hold Husband harmless to all such obligations. Husband's payments are in the nature of property distribution, not spousal support.

      **10f.** By execution of this Agreement, Husband agrees to convey to Wife, and Wife agrees to accept from Husband, by deed of assumption, all of the Husband's right, title and interest in and to the real property. Upon such conveyance, the property shall become and remain the exclusive property of Wife as her sole and separate estate, free from any claim from Husband and Wife shall thereafter have sole use, possession and enjoyment of the property and, except as provided in paragraph 10(e) of the Agreement. Husband further agrees to execute a deed conveying his interest in the property to Wife within ten days of the execution of this Agreement. It is further understood by the parties that Husband shall be fully and individually responsible for all costs incidental to preparation and recordation of the deed transferring Husband's interest in the marital residence to Wife.

      **11.**    **PERSONAL PROPERTY**

      **11a.**    **Vehicles** –

      Husband and Wife agree that Wife shall convey all right, title and interest to that 1990 F150, currently titled in the name of the Husband, which shall then become and remain the exclusive property of Husband, who will have sole use, possession and enjoyment of same, and shall be fully and individually responsible for payment of any and all costs incidental to his ownership of the vehicle, including maintenance, personal property taxes, insurance and payment of any and all loans arising from the ownership. Husband hereby releases and indemnifies and holds Wife harmless as to these obligations.

      Husband and Wife agree that Wife shall convey all right, title and interest to that 1996

Subaru Outback, currently titled in the name of the Husband, which shall then become and remain the exclusive property of Husband, who will have sole use, possession and enjoyment of same, and shall be fully and individually responsible for payment of any and all costs incidental to his ownership of the vehicle, including maintenance, personal property taxes, insurance and payment of any and all loans arising from the ownership. Husband hereby releases and indemnifies and holds Wife harmless as to these obligations.

Husband and Wife agree that Husband shall convey all right, title and interest to that 2002 Ford Explorer, currently titled in the name of the Husband, which shall then become and remain the exclusive property of Wife, who will have sole use, possession and enjoyment of same, and shall be fully and individually responsible for payment of any and all costs incidental to her ownership of the vehicle, including maintenance, personal property taxes, insurance and payment of any and all loans arising from the ownership. Wife hereby releases and indemnifies and holds Husband harmless as to these obligations. Husband agrees to execute the appropriate paperwork from the DMV to transfer title to Wife within ten days of the execution of this Agreement.

**11b.** __Miscellaneous Personal Property__ - The parties agree that Husband has already removed all of his miscellaneous personal property from the real estate, and the remaining contents shall be the property of Wife.

**12.** __DEBTS AND ACCOUNTS__

**12a.** Husband and Wife have agreed between themselves, to their mutual satisfaction, as to the disposition of all monies, deposits, securities, or any other financial accounts not herein mentioned, whether tangible or intangible, currently titled in joint names or individually. Wife hereby releases any and all claims she may have on any accounts presently in the Husband's name

Page 14 of 21 Pages

(except such assets not disclosed by Husband as provided for in paragraph 3). Husband hereby

releases any and all claims he may have on any account presently in the name of Wife.

**12b.**    UVA Credit Card. Husband agrees to be responsible for his UVA credit card, and

to make the monthly payments due thereon until paid in full, and to indemnify and hold Wife

harmless as to this obligation.

**12c.**    Wife's student loans. The parties agree that these loans were incurred as much for

the living expenses of the family as they were for Wife's education. Accordingly, Husband agrees

to pay to Wife, by the first day of each month, the amount equal to forty percent (40%) of each

monthly payment until this indebtedness is paid in full. Husband's payments are in the nature of

property distribution, not spousal support.

**12d.**    The parties each agree not to secure any further credit in the name of the other

without the other's written consent, and not to make or cause to be made any obligations for which

the other or the other's estate would be liable or responsible.

## 13.    OMITTED MARITAL AND SEPARATE PROPERTY

**13a.**    Husband and Wife have attempted to include in this instrument provisions for the

distribution between them of all property owned by them jointly or individually, but recognize that

in doing so they may have inadvertently omitted reference to some property in this Agreement.

Notwithstanding any such omission, Husband and Wife agree that any omitted property, real or

personal, shall in no manner affect the validity of this Agreement, which shall remain enforceable

with the following agreed disposition of omitted property to take place (Set forth in 13b-13d).

**13b.**    Husband and Wife agree that jointly owned omitted property shall continue to be

jointly owned with disposition to be made at such time as the parties may agree and upon such

terms and conditions as the parties agree.

**13c.**   Husband and Wife agree that any omitted property which is owned by Wife or which separate property of Wife (as separate property is defined in this Agreement) shall continue to be owned by Wife free and clear of any claim by Husband.

**13d.**   Husband and Wife agree that any omitted property which is owned by Husband or which constitutes separate property of Husband (as separate property is defined in this Agreement) shall continue to be owned by Husband free and clear of any claim by Wife (except such assets not disclosed by Husband as provided for in paragraph 3).

### 14.   TAX RETURNS AND CONSEQUENCES

By execution of this Agreement, Husband and Wife agree that for the tax year 2008, and for any and all future years in which they may file joint federal and/or state tax returns and receive refund(s) as a result, the proceeds derived thereby shall be divided equally between them.  Both parties agree and stipulate that they are not required to file a joint return.  In the even they file a joint return, and, as a consequence of filing such joint return, the parties are required to pay additional federal/state income taxes, the parties agree and stipulate that any amount due and owing shall be apportioned between the parties based on the percentage attributable to their respective incomes.

### 15.   MUTUAL RELEASE OF CLAIMS TO PROPERTY AND ESTATE

Except as herein provided:

**15a.**   Husband hereby forever relinquishes and releases all of his right, title, and interest, which he now has or ever may have in and to the real, personal, separate or marital property of Wife, all right of courtesy, all right, title and interest which he has or ever may have in and to the

property and assets of Wife presently held or acquired in the future or estate of Wife, at her death, and all right and interest to take under or against her will or the intestate laws, and each and every other right, title, and interest he has or ever may have against Wife, her heirs, executors, administrators and assigns, excepting only every right that is given him in and by this Agreement.

**15b.**    Wife forever relinquishes and releases all right, title, and interest which she now has or ever may have in and to the real, personal, separate or marital property of Husband, all right of dower, all right, title and interest which she has or ever may have in and to the property and assets of Husband presently held or acquired in the future or estate of Husband, at his death, and all right and interest to take under or against his will or under the intestate laws, and each and every other right, title, and interest she has or ever may have against  Husband, his heirs, executors, administrators and assigns, excepting only every right that is given her in and by this Agreement (except such assets not disclosed by Husband as provided for in paragraph 3).

**15c.**    Subject to the terms and conditions hereof, neither Husband nor Wife shall have or acquire any right, title or interest in or to the property of the other whether now owned or hereafter acquired, and each shall hold all real and personal property which he or she may now own or hereafter acquire or have any interest in, free from any claims or right of courtesy or dower, whether inchoate or otherwise.

## 16.    FURTHER ASSURANCE

Except as otherwise stated herein, the parties hereto mutually agree to execute, acknowledge and deliver, upon request of the other, his or her heirs, devisees, personal representatives or assigns, any and all instruments to enable each party or his or her heirs, devisees, personal representatives or assigns to:

**a.** Bargain, sell, convey, devise, or otherwise dispose of any property, now owned or hereafter acquired, free and clear of any real or apparent right of the other that might otherwise accrue by virtue of the marriage; and

**b.** Give full force and effect to this Agreement and to the covenants, considerations and agreements herein contained.

## 17. UNDERSTANDING OF TERMS

THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED BY COUNSEL IN THE PREPARATION AND NEGOTIATION OF THIS DOCUMENT AND RECITE THAT THEY HAVE THOROUGHLY READ THIS AGREEMENT AND UNDERSTAND ITS TERMS. HUSBAND UNDERSTANDS THAT EDWARD S. WHITLOCK, III, ESQUIRE REPRESENTS WIFE, NOT HUSBAND, AND THAT EDWARD S. WHITLOCK, III, ESQUIRE HAS GIVEN HUSBAND NO LEGAL ADVICE.

## 18. COUNSEL FEES

Husband hereto agrees to be responsible for his and for Wife's attorney's fees incurred in connection with the negotiation and execution of this Agreement and any divorce which may ensue. Should either party, however, at any time be determined by a court of competent jurisdiction to have breached the terms of this Agreement, he or she shall be liable for all reasonable attorney's fees and Court costs incurred by the other in the enforcement hereof.

## 19. PRIVACY

Both Husband and Wife shall be free from interference, molestation, authority and control, direct or indirect, of any kind by the other, and neither shall interfere in any manner with the other.

**20.   RECONCILIATION**

In the event of reconciliation and resumption of the marital relationship between the parties, the provisions of this agreement for settlement of property rights shall nevertheless continue in full force and effect without abatement of any terms or provisions hereof, except as otherwise provided by written agreement duly executed by each of the parties in consideration of the reconciliation.

**21.   MODIFICATION AND WAIVER**

A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. Failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

**22.   PARTIAL INVALIDITY**

If any provision of this Agreement is held to be invalid or unenforceable, all other provisions of this Agreement shall nevertheless continue in full force and effect.

**23.   REVOCATION OF PRIOR AGREEMENTS**

By execution of this Agreement, the parties hereby expressly revoke any and all prior separation agreements heretofore discussed or executed between them.

**24.   BENEFIT**

The terms, conditions and provisions of this Agreement shall be binding upon and shall inure to the benefit of Husband and Wife, and their respective heirs, personal representatives, executors, administrators, and assigns.

**25.   COMPLETE AGREEMENT**

This Agreement contains the entire understanding of the parties. There are no

representations, warranties, covenants or undertakings other than those expressly set forth herein.

### 26.   **COUNTERPARTS**

This agreement may be executed in multiple originals.  Husband and Wife agree that any executed copy shall be considered as an original, the multiple originals constituting one and the same instrument.  The parties further agree that photocopies of this Agreement shall be binding as the original.

### 27.   **SITUS**

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.



WITNESS the following signatures and seals as of the date first above written.

_____ (SEAL)
Andrew Pratt Gunter

_____ (SEAL)
Leslie Beth Stanford Gunter

COMMONWEALTH of VIRGINIA,
CITY/COUNTY of _Henrico_ , to-wit:

I, the undersigned Notary Public, do hereby certify that Andrew Pratt Gunter appeared before me in the jurisdiction aforesaid and acknowledged his signature affixed to the foregoing Agreement dated the _18th_ day of July, 2008.

Given under my hand this _18th_ day of July, 2008.

_September M. Edwards_
Notary Public

My commission expires: _10-31-11_ .
_Notary ID# 148368_

COMMONWEALTH of VIRGINIA,
CITY/COUNTY of _Henrico_ , to-wit:

I, the undersigned Notary Public, do hereby certify that Leslie Beth Stanford Gunter appeared before me in the jurisdiction aforesaid and acknowledged her signature affixed to the foregoing Agreement dated the _18th_ day of July, 2008.

Given under my hand this _18th_ day of July, 2008.

_September M. Edwards_
Notary Public

My commission expires: _10-31-11_ .
_Notary ID# 148368_

Page 21 of 21 Pages

# EXHIBIT 3



Bank of America, N.A.
5401 N Beach St
TX2-977-01-34
Fort Worth, TX 76137

February 28, 2013

Andrew Gunter
9011 Willowbrook Dr.
Richmond, VA 23228

Loan Number: ████████

Dear Andrew Gunter:

We have reviewed your request for a loan modification under the Home Affordable Modification Program including your eligibility under the recently expanded program guidelines. While we realize this decision comes at a difficult time in your life, we regret to inform you that your loan is not eligible for a Home Affordable Modification for the reason stated below.

We encourage you to continue making your payments and keep your loan in good standing. **If you feel you will not be able to continue making payments, please call 1.800.669.6650 to discuss whether another program may be available to you.**

We want to work with you to determine the best option for your individual situation to avoid foreclosure. Below is a description of the program(s) your loan could be eligible for:

*   A different modification program that may help you achieve affordable payments.
*   A forbearance program. With this program you could receive lower payments or no payments for a limited number of months to either give you time to resolve your financial difficulties or give us time to work together with you on a more permanent solution.

**Reason your loan was not eligible for the Home Affordable Modification Program**

Under the guidelines of the Home Affordable Modification Program:

We are unable to offer you a Home Affordable Modification because you have not missed two or more mortgage payments.

According to the guidelines of the Home Affordable Program, you have 30 days to appeal the decision that your loan is not eligible for the program. Please contact us by March 30, 2013 at **1.800.854.6885**, if you think that the information used to determine your eligibility is incorrect.

**We're here to help – take the next steps**

We want to work with you to stay in your home, **so take the next step by calling 1.800.669.6650 today.**

You may also contact us by email at mha_decline_review@bankofamerica.com. We strongly discourage you from sending personal information via email unless it is sent through a secure, encrypted method. Unencrypted emails are at risk of being intercepted or seen by unauthorized parties. In order to learn more about how to send your information to us securely, please contact your Customer Relationship Manager at 1.800.669.6650, who can assist you with this process. Please note that Bank of America, N.A. will at no time solicit you to send us confidential information via email.

C3_770-5B

# EXHIBIT 4



## Fwd: Finances

1 message

**The Gunters** ████████████████████████                          ████████████████████████
To: Jason Greenwood ████████████████████████

---------- Forwarded message ----------
From: ████████████████████████
Date: Fri, Apr 12, 2013 at 10:01 AM
Subject: Finances
To: Beth & Jay Tubb ████████████████████

Beth

My family and I have worked together to help pay for the mortgage of the house at 3406 Merkner Dr. for the past five years.  My family can no longer help me financially. Therefore I have been trying to re-finance the house without success.  I have tried two lending institutions and they both pointed out that the law states that if I don't live there then it is considered investment property, so they will not re-finance. I also tried to modify the loan twice and was turned down for the same reason. My net pay is 3,126.06 a month. Child Support is 1,655.00. Mortgage payment is 1,438.00.  This leaves me with 33.06 a month to live on.  I cannot live on 33.06 a month. I do not want you and the kids to lose the house. I have been working hard for five years to keep you and the kids in the house. I can no longer pay the mortgage.  I want you to keep the house but I need you and your husband to take over the mortgage payments for the house or I can sell the house to you. You will be able to buy the house for what I owe on the house which with the right interest rate would be a great deal. You will not find a comparable house for this amount of money and your mortgage may be less with the low interest rates available now.  This is the only option I have left that keeps you and the kids in the house.  I am not trying to get out of giving you the house, it's yours, I just can't afford to keep paying the mortgage. Foreclosure is imminent. I have been talking to a bankruptcy lawyer, and bankruptcy is a viable option because in the agreement the language specifically states that the house is property and not support. Bankruptcy would delay the foreclosure, but in the end the house would still be lost.  I understand by foreclosing or declaring bankruptcy that you could take me to court for contempt of court and that I could face jail time or a financial penalty, but in the end the house is still lost and if I go to jail then child support and most likely my job would be lost as well. A new job at a much lower pay scale would result in adjusted child support.  I know that this is upsetting, but I believe that between your salary, Jay's salary, and continued child support that you can afford to take over the mortgage or buy the house from me.  Like I said, foreclosure or bankruptcy is imminent.

Sincerely

Andrew Gunter

--



---

## Fwd: Bankruptcy
1 message

---

**The Gunters** <span style="background:black;color:black">████████████</span>        <span style="background:black;color:black">████████████</span>
To: Jason Greenwood <span style="background:black;color:black">████████████</span>

---------- Forwarded message ----------
From: <span style="background:black;color:black">████████████</span>
Date: Thu, May 9, 2013 at 2:48 PM
Subject: Bankruptcy
To: Beth & Jay Tubb <span style="background:black;color:black">████████████</span>

Dear Beth

I have met with a Bankruptcy lawyer. As I stated before, I can no longer pay the mortgage for the house at 3406 Merkner Drive. You have left me with little other choice in the matter.  I am forced to pursue a bankruptcy of my debts due to the unconscionable maliciousness of the property settlement. Your financial circumstances have changed drastically since the property settlement was drafted; you have your income plus your husband's income plus child support.  All of this, yet you still require me to support you and to support Jay as well, this seems egregious. As for being held in contempt in state court, federal bankruptcy law will protect me from being charged with contempt of court.

I would like to extend one last offer before we file for bankruptcy.  I would like to offer to pay five hundred dollars a month toward the mortgage at 3406 Merkner Drive. You and your husband would be responsible for the remainder of the mortgage, roughly nine-hundred dollars for the next five years, and then you and your husband would take over the mortgage in the house you live in.  This is a very fair and Christian solution to the problem that allows you and the kids to stay in the house, and allows me to simply live. I am only asking of you what I often read on your car's bumper, "live simply so others can simply live".  Please consider this offer as I am not asking for anything unreasonable from you and your husband, I just want to be able to simply live. Please let me know your decisions promptly as I have another meeting with my bankruptcy lawyer next week.

Sincerely,

Andrew Gunter

# EXHIBIT 5



**COUNTY OF HENRICO - FINANCE DEPARTMENT**
**REAL ESTATE ASSESSMENT DIVISION**

Address: 4301 E. Parham Rd.
Henrico, VA 23273-2745
Phone: 804-501-4300
Fax: 804-501-5420

## Base Information

| | |
|---|---|
| **Parcel ID** | 764-763-9412 |
| **Vision PID #** | 48526 |
| **State Code** | Resid (Urban) |
| **Use Code** | 210 Res - Subd (1 Fam) |
| **Tax Type** | Taxable |
| **Zoning** | R-2 |
| **Tax Dist** | Regular |
| **Magisterial** | Brookland |
| **Subdivision** | Courtney |
| **Section** | C |
| **Block** | B |
| **Lot** | 24 |

| | |
|---|---|
| **Parcel Address** | 3406 MERKNER DR |
| **Appraiser** | E |
| **Neighborhood** | 3E030 - |
| **Acreage** | 0 |
| **Owner (Jan 1)** | GUNTER ANDREW & LESLIE BETH STANFORD |
| **Owner (Cur)** | GUNTER ANDREW & LESLIE BETH STANFORD |
| **Mailing Address** | 3406 MERKNER DR |
| | GLEN ALLEN VA |
| **Zip** | 23060 |
| **Old Map #** | 0040010000B 0024 |
| **Pre 1992 Map #** | 91 B1 17 |
| **Map Page #** | 63 |

### Image



Last Photo Update 03/27/1997

## Residential Information

| | | | | | |
|---|---|---|---|---|---|
| **Style** | 09 Ranch | **No. of Stories** | 1 | **Sq Ft Finished Living** | 1,456 |
| **Year Built** | 1959 | **Total Rooms** | 7 | **Finished Attic** | 0 |
| **Grade** | C+1 | **Bedrooms** | 3 | **Unfinished Living** | 0 |
| **Ext. Walls** | 06 Brick (3 or 4) | **Full Bathrooms** | 2 | **Basement** | 0 |
| **Roof** | 1 Composition | **Half Bathrooms** | 0 | **Finished Basement** | 0 |
| **Heating** | 04 Radiant | **Fireplace(s)** | 1 | **Foundation Type** | 1 Crawl |
| **Air Cond.** | 02 No | **No. of Chimneys** | 1 | **Basement Garage** | 0 |



## Last Transfer

| Sale Date | Sale Price | Deed Book | Page | Previous Owner | Sale Comment | # of Parcels |
|---|---|---|---|---|---|---|
| 01/30/2011 | $0 | 4849 | 1449 | GUNTER ANDREW & BETH | Non-Qualified | |

## Current Assessment

| Year | Date | Land | Land Use | Improvements | Total |
|---|---|---|---|---|---|
| 2013 | 02/05/2013 | $56,000 | | $119,700 | $175,700 |

## Additions, Outbuildings and Features

| Type | Improvement | Units/Area |
|---|---|---|
| Addition | Deck | 600 |

## Land Information

| Type | # Units | Unit Type | Sqft | Zoning |
|---|---|---|---|---|
| G5 | 1 | LOTS | 0 | R-2 |

## Notes

no data found

### Sketch Details

| Code | Desc | Gross | Living | Cns Style |
|---|---|---|---|---|
| 1FF | 1st Fl Finished | 1,456 | 1,456 | 09 |
| WDK | Deck | 600 | 0 | 09 |

### Map



**Legal Disclaimer:** Non-confidential real estate assessment records are public information under Virginia law, and Internet display of non-confidential property information is specifically authorized by Virginia Code 58.1-3122.2. While the Real Estate Division has worked to ensure that the assessment data contained herein is accurate, Henrico County assumes no liability for any errors, omissions, or inaccuracies in the information provided or for any reliance on any maps or data provided herein. Please consult County records in the Real Estate Division for official information.

Click Real_Estate_Comments to submit comments or corrections.

# <u>**EXHIBIT 6**</u>

**Bank of America**
Home Loans

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Statement date 08/05/2013
**Account Number**
Property address
3406 Merkner Drive

1 of 4

### Home loan overview
| | |
|---|---|
| Principal Balance | $166,483.41 |
| Escrow balance | $1,419.09 |

0012279 01 AT 0.381 **AUTO  T8 0 2050 23228-2242
MSR L2 AG 0000—-8—2— M24409 IN 1 P 12291
ANDREW GUNTER
9011 WILLOWBROOK DR
RICHMOND VA 23228-2242



**FOR CUSTOMER SERVICE: 1.800.669.6607**

## Sign Up For Account Alerts

With Bank of America, N.A. PayPlan Services, you don't need to receive monthly paper statements anymore! You can get something you may find of more value — **Account Alerts**. These timely emails help in many ways. They:

- **Confirm** when your payment has posted
- **Keep you up-to-date** on important account information

So visit www.bankofamerica.com from a personal computer and sign up for Account Alerts today!

### Payments and amounts due summary

| Current payment due on 09/01/2013 as of 08/05/2013 | | Total payments and amounts due | |
|---|---|---|---|
| Principal and/or interest payment | $1,198.66 | Current payment due on 09/01/2013 | $1,397.29 |
| Escrow payment amount | $198.63 | Outstanding late charges and fees due (as applicable) | $93.37 |
| **Payment due on 09/01/2013** | **$1,397.29** | **Total** | **$1,490.66** |
| Late charge of $59.93 if payment received after 09/16/2013 | | | |

You can make your payment:
- By automatic draft payment using PayPlan
- Online at www.bankofamerica.com
- By phone - call 1.800.669.6607
- At any Bank of America Banking Center
- By mail using the enclosed envelope
  -Make your check payable to Bank of America, N.A.
  -Please write your loan number on the check or money order
  -Include this payment coupon with your check (do not staple your check to the coupon)
  -Please do not send cash or include correspondence

Loan Number
Andrew Gunter
3406 Merkner Drive
Glen Allen, VA 23060
(6)

Payment due **Sep 1, 2013**  **$1,397.29**
If payment received after **Sep 16, 2013**  **$1,457.22**
*"Payment due" does not include any past due payments, outstanding late charges or fees due.

Bank of America, N.A.
PO BOX 15222
WILMINGTON, DE 19886-5222

Additional Principal

Additional Escrow

Total amount enclosed

B6D (Official Form 6D) (12/07)

In re   **Andrew P. Gunter**                                                          ,     Case No. _____
                              Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | | |
| Account No. **127805925** | | | | Opened  3/01/06  Last Active  8/02/13 First Mortgage | | | | | |
| **Bank of America** Attn: Correspondence Unit CA6-919-02-41 PO Box 5170 Simi Valley, CA 93062 | - | | | 4 BR, 2 BA Single Family Home, 0.3 acres 3406 Merkner Drive, Glen Allen, VA 23060 2013 RE Tax Assessed Value = $175,700 | | | | | |
| | | | | Value $                                    175,700.00 | | | | 166,483.00 | 0.00 |
| Account No. **127805925** | | | | | | | | | |
| **Bank of America Home Loans** PO Box 5170 Simi Valley, CA 93062-3170 | | | | Representing: **Bank of America** | | | | **Notice Only** | |
| | | | | Value $ | | | | | |
| Account No. **433683100** | | | | Opened  5/10/11  Last Active  7/08/13 Auto Loan | | | | | |
| **Henrico Federal Credit Union** 8611 Dixon Powers Richmond, VA 23228 | - | | | 2011 Ford Fiesta (37,000 miles) Location: 9011 Willow Brook Drive, Henrico VA 23228 2013 PP Tax Assessed Value = $9680.00 | | | | | |
| | | | | Value $                                      9,680.00 | | | | 6,475.15 | 0.00 |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| | | | | Value $ | | | | | |

**0**___ continuation sheets attached

|  | Subtotal (Total of this page) | 172,958.15 | 0.00 |
|---|---|---|---|
|  | Total (Report on Summary of Schedules) | 172,958.15 | 0.00 |

# **EXHIBIT 7**

B6F (Official Form 6F) (12/07)

In re __Andrew P. Gunter_____,  Case No. _____
                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | |
| Account No. | | | | | CRA Notice Only | | | | |
| Equifax Credit Info Svcs, Inc. P.O. Box 740241 Atlanta, GA 30374 | | - | | | | | | | 0.00 |
| Account No. | | | | | | | | | |
| Equifax Information Svc. Ctr. P.O. Box 105873 Atlanta, GA 30348 | | | | | Representing: Equifax Credit Info Svcs, Inc. | | | | Notice Only |
| Account No. | | | | | CRA Notice Only | | | | |
| Experian Information Solutions Attn: Supervisor, Legal Dept. 701 Experian Parkway P.O. Box 1240 Allen, TX 75013 | | - | | | | | | | 0.00 |
| Account No. | | | | | 1/2011 523(a)(15) unsecured debt obligation to pay 40% student loans of former spouse - to be the subject of AP to declare dischargeability pursuant to 11 USC 523(a)(15) and 11 USC 1328(a). | | | | |
| Leslie Beth Stanford-Tubb 3406 Merkner Drive Glen Allen, VA 23060 | | - | | | | | | X | Unknown |

| | | |
|---|---|---|
| __2__ continuation sheets attached | Subtotal (Total of this page) | 0.00 |

B6F (Official Form 6F) (12/07) - Cont.

In re __Andrew P. Gunter_____,     Case No. _____

                              Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | 1/2011 | | | | |
| Leslie Beth Stanford-Tubb 3406 Merkner Drive Glen Allen, VA 23060 | | - | | 523(a)(15) unsecured debt obligation to pay first mortgage for residence of former spouse - to be the subject of AP to declare dischargeability pursuant to 11 USC 523(a)(15) and 11 USC 1328(a). | | | X | |
| | | | | | | | | 166,483.00 |
| Account No. | | | | Unsecured debt for professional services and costs | | | | |
| Locke Partin DeBoer & Quinn PO Box 11708 Richmond, VA 23230 | | - | | | | | | |
| | | | | | | | | 11,200.00 |
| Account No. 1049354234 | | | | Opened 6/01/93 Last Active 8/08/13 Shell Credit Card | | | | |
| Texaco / Citibank Citicorp Credit Services PO Box 20507 Kansas City, MO 64195 | | | | | | | | |
| | | | | | | | | 216.00 |
| Account No. | | | | CRA Notice Only | | | | |
| TransUnion P.O. Box 6790 Fullerton, CA 92834 | | - | | | | | | |
| | | | | | | | | 0.00 |
| Account No. | | | | Representing: TransUnion | | | | |
| TransUnion P.O. Box 2000 Crum Lynne, PA 19022 | | | | | | | | Notice Only |

Sheet no. __1__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)      177,899.00

# **EXHIBIT 8**

13-34737

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA

## CHAPTER 13 PLAN
## AND RELATED MOTIONS

Name of Debtor(s):     **Andrew P. Gunter**                          Case No:

This plan, dated ___**August 31, 2013**___ , is:

⊠ the *first* Chapter 13 plan filed in this case.
☐ a modified Plan, which replaces the
☐ confirmed or ☐ unconfirmed Plan dated .

Date and Time of <u>Modified Plan</u> Confirming Hearing:

Place of <u>Modified Plan</u> Confirmation Hearing:

The Plan provisions modified by this filing are:

Creditors affected by this modification are:

**NOTICE: YOUR RIGHTS WILL BE AFFECTED. You should read these papers carefully. If you oppose any provision of this Plan, or if you oppose any included motions to (i) value collateral, (ii) avoid liens, or (iii) assume or reject unexpired leases or executory contracts, you MUST file a timely written objection.**

**This Plan may be confirmed and become binding, <u>and the included motions in paragraphs 3, 6, and 7 to value collateral, avoid liens, and assume or reject unexpired leases or executory contracts may be granted,</u> without further notice or hearing unless a written objection is filed not later than seven (7) days prior to the date set for the confirmation hearing and the objecting party appears at the confirmation hearing.**

The debtor(s)' schedules list assets and liabilities as follows:

Total Assets: **$242,261.00**
Total Non-Priority Unsecured Debt: **$179,680.00**
Total Priority Debt: **$126.00**
Total Secured Debt: **$172,958.15**

Software Copyright (c) 1996-2013 Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

13-34737

1. **Funding of Plan.** The debtor(s) propose to pay the trustee the sum of **$350.00 Monthly for 36 months**. Other payments to the Trustee are as follows: **NONE**. The total amount to be paid into the plan is $ **12,600.00** .

2. **Priority Creditors.** The Trustee shall pay allowed priority claims in full unless the creditor agrees otherwise.

   A. **Administrative Claims under 11 U.S.C. § 1326.**

      1. The Trustee will be paid the percentage fee fixed under 28 U.S.C. § 586(e), not to exceed 10%, of all sums disbursed except for funds returned to the debtor(s).
      2. Debtor(s)' attorney will be paid $ **0.00** balance due of the total fee of $ **3,000.00** concurrently with or prior to the payments to remaining creditors.

   B. **Claims under 11 U.S.C. §507.**
      The following priority creditors will be paid by deferred cash payments pro rata with other priority creditors or in monthly installments as below, except that allowed claims pursuant to 11 U.S.C. § 507(a)(1) will be paid prior to other priority creditors but concurrently with administrative claims above:

| Creditor | Type of Priority | Estimated Claim | Payment and Term |
|---|---|---|---|
| **Leslie Beth Stanford-Tubb** | **Domestic support obligations** | **126.00** | Prorata<br>2 months |

3. **Secured Creditors: Motions to Value Collateral ("Cramdown"), Collateral being Surrendered, Adequate Protection Payments, and Payment of certain Secured Claims.**

   A. **Motions to Value Collateral (other than claims protected from "cramdown" by 11 U.S.C. § 1322(b)(2) or by the final paragraph of 11 U.S.C. § 1325(a)). Unless a written objection is timely filed with the Court, the Court may grant the debtor(s)' motion to value collateral as set forth herein.**

   This section deals with valuation of certain claims secured by real and/or personal property, other than claims protected from "cramdown" by 11 U.S.C. § 1322(b)(2) [real estate which is debtor(s)' principal residence] or by the final paragraph of 11 U.S.C. § 1325(a) [motor vehicles purchased within 910 days or any other thing of value purchased within 1 year before filing bankruptcy], in which the replacement value is asserted to be less than the amount owing on the debt. **Such debts will be treated as secured claims only to the extent of the replacement value of the collateral. That value will be paid with interest as provided in sub-section D of this section. You must refer to section 3(D) below to determine the interest rate, monthly payment and estimated term of repayment of any "crammed down" loan. The deficiency balance owed on such a loan will be treated as an unsecured claim to be paid only to the extent provided in section 4 of the Plan.** The following secured claims are to be "crammed down" to the following values:

| Creditor | Collateral | Purchase Date | Est Debt Bal. | Replacement Value |
|---|---|---|---|---|
| -NONE- | | | | |

   B. **Real or Personal Property to be Surrendered.**

   Upon confirmation of the Plan, or before, the debtor(s) will surrender his/her/their interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditors' allowed claims. To the extent that the collateral does not satisfy the claim, any timely filed deficiency claim to which the creditor is entitled may be paid as a non-priority unsecured claim. Confirmation of the Plan shall terminate the automatic stay as to the interest of the debtor(s) and the estate in the collateral.

| Creditor | Collateral Description | Estimated Value | Estimated Total Claim |
|---|---|---|---|
| **Bank of America** | **4 BR, 2 BA Single Family Home, 0.3 acres**<br>**3406 Merkner Drive, Glen Allen, VA 23060**<br>**2013 RE Tax Assessed Value = $175,700** | **175,700.00** | **166,483.00** |

Page 2 of 6

13-34737

C.    **Adequate Protection Payments.**

The debtor(s) propose to make adequate protection payments required by 11 U.S.C. § 1326(a) or otherwise upon claims secured by personal property, until the commencement of payments provided for in sections 3(D) and/or 6(B) of the Plan, as follows:

| Creditor | Collateral Description | Adeq. Protection Monthly Payment | To Be Paid By |
|---|---|---|---|
| -NONE- | | | |

Any adequate protection payment upon an unexpired lease of personal property assumed by the debtor(s) pursuant to section 6(B) of the Plan shall be made by the debtor(s) as required by 11 U.S.C. § 1326(a)(1)(B) (payments coming due after the order for relief).

D.    **Payment of Secured Claims on Property Being Retained (except only those loans provided for in section 5 of the Plan):**

This section deals with payment of debts secured by real and/or personal property [including short term obligations, judgments, tax liens and other secured debts]. After confirmation of the Plan, the Trustee will pay to the holder of each allowed secured claim, which will be either the balance owed on the indebtedness or, where applicable, the collateral's replacement value as specified in sub-section A of this section, **whichever is less**, with interest at the rate provided below, the monthly payment specified below until the amount of the secured claim has been paid in full. **Upon confirmation of the Plan, the valuation and interest rate shown below will be binding unless a timely written objection to confirmation is filed with and sustained by the Court.**

| Creditor | Collateral | Approx. Bal. of Debt or "Crammed Down" Value | Interest Rate | Monthly Paymt & Est. Term** |
|---|---|---|---|---|
| -NONE- | | | | |

E.    **Other Debts.**

Debts which are (i) mortgage loans secured by real estate which is the debtor(s)' primary residence, or (ii) other long term obligations, whether secured or unsecured, to be continued upon the existing contract terms with any existing default in payments to be cured pursuant to 11 U.S.C. § 1322(b)(5), are provided for in section 5 of the Plan.

4.    **Unsecured Claims.**

A.    **Not separately classified.** Allowed non-priority unsecured claims shall be paid pro rata from any distribution remaining after disbursement to allowed secured and priority claims. Estimated distribution is approximately __3__ %. The dividend percentage may vary depending on actual claims filed. If this case were liquidated under Chapter 7, the debtor(s) estimate that unsecured creditors would receive a dividend of approximately __0__ %.

B.    **Separately classified unsecured claims.**

| Creditor | Basis for Classification | Treatment |
|---|---|---|
| -NONE- | | |

Software Copyright (c) 1996-2013 Best Case, LLC - www.bestcase.com                                            Best Case Bankruptcy

**5.**  **Mortgage Loans Secured by Real Property Constituting the Debtor(s)' Primary Residence; Other Long Term Payment Obligations, whether secured or unsecured, to be continued upon existing contract terms; Curing of any existing default under 11 U.S.C. § 1322(b)(5).**

A.  **Debtor(s) to make regular contract payments; arrears, if any, to be paid by Trustee.**  The creditors listed below will be paid by the debtor(s) pursuant to the contract without modification, except that arrearages, if any, will be paid by the Trustee either pro rata with other secured claims or on a fixed monthly basis as indicated below, without interest unless an interest rate is designated below for interest to be paid on the arrearage claim and such interest is provided for in the loan agreement.

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Arrearage Interest Rate | Estimated Cure Period | Monthly Arrearage Payment |
|---|---|---|---|---|---|---|
| **Henrico Federal Credit Union** | **2011 Ford Fiesta (37,000 miles) Location: 9011 Willow Brook Drive, Henrico VA 23228 2013 PP Tax Assessed Value = $9680.00** | **190.00** | **0.00** | **0%** | **0 months** | |

B.  **Trustee to make contract payments and cure arrears, if any.**  The Trustee shall pay the creditors listed below the regular contract monthly payments that come due during the period of this Plan, and pre-petition arrearages on such debts shall be cured by the Trustee either pro rata with other secured claims or with monthly payments as set forth below.

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Interest Rate | Term for Arrearage | Monthly Arrearage Payment |
|---|---|---|---|---|---|---|
| -NONE- | | | | | | |

C.  **Restructured Mortgage Loans to be paid fully during term of Plan.**  Any mortgage loan against real estate constituting the debtor(s)' principal residence upon which the last scheduled contract payment is due before the final payment under the Plan is due shall be paid by the Trustee during the term of the Plan as permitted by 11 U.S.C. § 1322(c)(2) with interest at the rate specified below as follows:

| Creditor | Collateral | Interest Rate | Estimated Claim | Monthly Paymt & Est. Term** |
|---|---|---|---|---|
| -NONE- | | | | |

**6.**  **Unexpired Leases and Executory Contracts.**  The debtor(s) move for assumption or rejection of the executory contracts and leases listed below.

A.  **Executory contracts and unexpired leases to be rejected.**  The debtor(s) reject the following executory contracts.

| Creditor | Type of Contract |
|---|---|
| -NONE- | |

B.  **Executory contracts and unexpired leases to be assumed.**  The debtor(s) assume the following executory contracts.  The debtor agrees to abide by all terms of the agreement.  The Trustee will pay the pre-petition arrearages, if any, through payments made pro rata with other priority claims or on a fixed monthly basis as indicated below.

| Creditor | Type of Contract | Arrearage | Monthly Payment for Arrears | Estimated Cure Period |
|---|---|---|---|---|
| -NONE- | | | | |

Software Copyright (c) 1996-2013 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**7.**     **Liens Which Debtor(s) Seek to Avoid.**

<span style="color:red">13-34737</span>

    **A.**     **The debtor(s) move to avoid liens pursuant to 11 U.S.C. § 522(f).** The debtor(s) move to avoid the following judicial liens and non-possessory, non-purchase money liens that impair the debtor(s)' exemptions. **Unless a written objection is timely filed with the Court, the Court may grant the debtor(s)' motion and cancel the creditor's lien.** If an objection is filed, the Court will hear evidence and rule on the motion at the confirmation hearing.

| Creditor | Collateral | Exemption Amount | Value of Collateral |
|---|---|---|---|
| -NONE- | | | |

    **B.**     **Avoidance of security interests or liens on grounds other than 11 U.S.C. § 522(f).** The debtor(s) have filed or will file and serve separate pleadings to avoid the following liens or security interests. The creditor should review the notice or summons accompanying such pleadings as to the requirements for opposing such relief. The listing here is for information purposes only.

| Creditor | Type of Lien | Description of Collateral | Basis for Avoidance |
|---|---|---|---|
| -NONE- | | | |

**8.**     **Treatment and Payment of Claims.**

- All creditors must timely file a proof of claim to receive payment from the Trustee.
- If a claim is scheduled as unsecured and the creditor files a claim alleging the claim is secured but does not timely object to confirmation of the Plan, the creditor may be treated as unsecured for purposes of distribution under the Plan. This paragraph does not limit the right of the creditor to enforce its lien, to the extent not avoided or provided for in this case, after the debtor(s) receive a discharge.
- If a claim is listed in the plan as secured and the creditor files a proof of claim alleging the claim is unsecured, the creditor will be treated as unsecured for purposes of distribution under the Plan.
- The Trustee may adjust the monthly disbursement amount as needed to pay an allowed secured claim in full.

**9.**     **Vesting of Property of the Estate.** Property of the estate shall revest in the debtor(s) upon confirmation of the Plan. Notwithstanding such vesting, the debtor(s) may not sell, refinance, encumber real property or enter into a mortgage loan modification without approval of the Court after notice to the Trustee, any creditor who has filed a request for notice and other creditors to the extent required by the Local Rules of this Court.

**10.**     **Incurrence of indebtedness.** The debtor(s) shall not voluntarily incur additional indebtedness exceeding the cumulative total of $5,000 principal amount during the term of this Plan, either unsecured or secured against personal property, except upon approval of the Court after notice to the Trustee, any creditor who has filed a request for notice, and other creditors to the extent required by the Local Rules of this Court.

**11.**     **Other provisions of this plan:**

Unsecured creditors please note that percentage estimate in section 4 excludes $5000.00 of the possible unsecured dividend "pot". The sum of $5000.00 will be available to pay court approved supplemental debtor's attorney's fees, including but not limited to, fees associated with the adversary proceeding(s) necessary to dischargeability of debts pursuant to 11 U.S.C. §§ 523(a)(15) and 1328(a). The percentage claim payment in section 4 of the plan is an estimate of the dividend and the actual payment may be different or vary per this notice and the final tally of claims filed. If no supplemental fees are awarded then the percentage dividend may increase. You will receive notice of such application, if any.

Payment of Attorney Fees - Any and all claims for attorney fees shall be paid first out of funds available upon disbursement after confirmation of the plan and until such claim is paid in full, except as reserved for adequate protection payments on allowed secured claims, if any, and trustee commissions.

Par.3B - Any claim filed alleging an unsecured claim to the extent that surrendered collateral does not satisfy the alleged original secured claim shall be filed within 120 days of confirmation of the Ch.13 Plan, or within 120 days of an order granting relief from stay in order to conduct foreclosure proceedings on the surrendered property - whichever event occurs first. Any unsecured deficiency claim, and/or any claim amending a previously filed secured claim to add an unsecured deficiency claim, which is filed after the claim deadline in the case, and after the 120-day deadline specified above, shall be time-barred.

Software Copyright (c) 1996-2013 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

**Signatures:**

Dated:   **August 31, 2013**

| | |
|---|---|
| **/s/ Andrew P. Gunter** | **/s/ Jason S. Greenwood** |
| **Andrew P. Gunter** | **Jason S. Greenwood 74941** |
| **Debtor** | **Debtor's Attorney** |

**Exhibits:**   **Copy of Debtor(s)' Budget (Schedules I and J);**
**Matrix of Parties Served with Plan**

Certificate of Service

I certify that on _____**September 3, 2013**_____, I mailed a copy of the foregoing to the creditors and parties in interest on the attached
Service List.

**/s/ Jason S. Greenwood**
**Jason S. Greenwood 74941**
Signature

**1406 Princess Anne Street**
**Fredericksburg, VA 22401-3639**
Address

**(540) 368-5888**
Telephone No.

Ver. 09/17/09 [effective 12/01/09]

B6I (Official Form 6I) (12/07)

In re  **Andrew P. Gunter**      Case No.     13-34737

Debtor(s)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Married** | RELATIONSHIP(S): <br> **Daughter** <br> **Son** <br> **Son** | AGE(S): <br> **13** <br> **18** <br> **7** |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Teacher** | **Full-time Nanny** |
| Name of Employer | **Henrico County Public Schools** | **Private Employer** |
| How long employed | **8 years** | **3 years** |
| Address of Employer | **3820 Nine Mile Road** <br> **Richmond, VA 23223** | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ | **4,565.00** | $ | **1,908.00** |
| 2. Estimate monthly overtime | $ | **0.00** | $ | **0.00** |
| 3. SUBTOTAL | $ | **4,565.00** | $ | **1,908.00** |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|    a. Payroll taxes and social security | $ | **1,028.00** | $ | **347.00** |
|    b. Insurance | $ | **49.00** | $ | **0.00** |
|    c. Union dues | $ | **0.00** | $ | **0.00** |
|    d. Other (Specify):    **403B Contribution** | $ | **150.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | **1,227.00** | $ | **347.00** |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | **3,338.00** | $ | **1,561.00** |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | **0.00** | $ | **0.00** |
| 8. Income from real property | $ | **0.00** | $ | **0.00** |
| 9. Interest and dividends | $ | **0.00** | $ | **0.00** |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | **0.00** | $ | **0.00** |
| 11. Social security or government assistance (Specify): | $ | **0.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 12. Pension or retirement income | $ | **0.00** | $ | **0.00** |
| 13. Other monthly income (Specify): **Amortized anticipated tax refund(s)** | $ | **250.00** | $ | **0.00** |
| | $ | **0.00** | $ | **0.00** |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | **250.00** | $ | **0.00** |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | **3,588.00** | $ | **1,561.00** |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | $ | **5,149.00** | | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
     **Debtor's spouse's wages vary based on hours available and hours worked. Schedule I projected income for Debtor's spouse reflects average weekly income for the (6) mos. preceding filing ending 7/31/2013.**

B6J (Official Form 6J) (12/07)

In re __Andrew P. Gunter__                               Case No.      13-34737
                                Debtor(s)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | | |
|---|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ | 700.00 |
| a. Are real estate taxes included? Yes ___ No **X** | | | |
| b. Is property insurance included? Yes ___ No **X** | | | |
| 2. Utilities:   a. Electricity and heating fuel | | $ | 150.00 |
|           b. Water and sewer | | $ | 50.00 |
|           c. Telephone | | $ | 0.00 |
|           d. Other **Bundled Cable, Internet & Telephone** | | $ | 120.00 |
| 3. Home maintenance (repairs and upkeep) | | $ | 50.00 |
| 4. Food | | $ | 427.00 |
| 5. Clothing | | $ | 75.00 |
| 6. Laundry and dry cleaning | | $ | 25.00 |
| 7. Medical and dental expenses | | $ | 120.00 |
| 8. Transportation (not including car payments) | | $ | 225.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ | 75.00 |
| 10. Charitable contributions | | $ | 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | | |
|           a. Homeowner's or renter's | | $ | 0.00 |
|           b. Life | | $ | 0.00 |
|           c. Health | | $ | 0.00 |
|           d. Auto | | $ | 150.00 |
|           e. Other | | $ | 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | | |
|      (Specify)   **Amortized PP Taxes** | | $ | 38.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | | |
|           a. Auto | | $ | 190.00 |
|           b. Other **Spouse Car Payment** | | $ | 349.00 |
|           c. Other **Spouse Credit Card Debt Servicing** | | $ | 300.00 |
| 14. Alimony, maintenance, and support paid to others | | $ | 1,471.00 |
| 15. Payments for support of additional dependents not living at your home | | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | $ | 0.00 |
| 17. Other **See Detailed Expense Attachment** | | $ | 284.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | | $ | 4,799.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

      **Due to monthly payment requirements prior to filing petition, Debtor was forced to live with in-laws to save on rent / mortgage / living expenses. Sched.J projected expenses reflect a modest rent expense, together with projected utilities, denoting Debtor's post-petition aspiration and intent to seek a stand-alone residence for Debtor and spouse.**

20. STATEMENT OF MONTHLY NET INCOME

| | | | |
|---|---|---|---|
| a. | Average monthly income from Line 15 of Schedule I | $ | 5,149.00 |
| b. | Average monthly expenses from Line 18 above | $ | 4,799.00 |
| c. | Monthly net income (a. minus b.) | $ | 350.00 |

In re   **Andrew P. Gunter**                                                                                      Case No.   13-34737
                                                                                                                 _____
                                                      Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)
### Detailed Expense Attachment

**Other Expenditures:**

| | | |
|---|---|---|
| Misc. & Grooming | $ | 75.00 |
| Child Visitation-related expenses | $ | 75.00 |
| Child Out-of-Pocket Medical Expenses | $ | 99.00 |
| Pet & Vet Expenses | $ | 35.00 |
| **Total Other Expenditures** | $ | 284.00 |

Bank of America
Acct No 127805925
Attn: Correspondence Unit
CA6-919-02-41
PO Box 5170
Simi Valley, CA 93062


Bank of America Home Loans
Acct No 127805925
PO Box 5170
Simi Valley, CA 93062-3170


Equifax Credit Info Svcs, Inc.
P.O. Box 740241
Atlanta, GA 30374


Equifax Information Svc. Ctr.
P.O. Box 105873
Atlanta, GA 30348


Experian Information Solutions
Attn: Supervisor, Legal Dept.
701 Experian Parkway
P.O. Box 1240
Allen, TX 75013


Henrico Federal Credit Union
Acct No 433683100
8611 Dixon Powers
Richmond, VA 23228


Leslie Beth Stanford-Tubb
3406 Merkner Drive
Glen Allen, VA 23060


Locke Partin DeBoer & Quinn
PO Box 11708
Richmond, VA 23230


Texaco / Citibank
Acct No 1049354234
Citicorp Credit Services
PO Box 20507
Kansas City, MO 64195

13-34737

TransUnion
P.O. Box 6790
Fullerton, CA 92834


TransUnion
P.O. Box 2000
Crum Lynne, PA 19022


TransUnion
P.O. Box 1000
Chester, PA 19016


Urosurgical Center of Richmond
Acct No 413273
9105 Stony Point Drive
Richmond, VA 23235-1979


UVA Credit Union
Acct No 4630172000028578
3300 Berkmar Drive
Charlottesville, VA 22901

# EXHIBIT 9

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:     **ANDREW P. GUNTER**                          Case No.  13-34737
                                                         Chapter 13
              Debtor(s)

## ORDER CONFIRMING PLAN

The Chapter 13 Plan filed by the debtor (s) on **August 31, 2013**, replacing all previously filed plans, if any, having been transmitted to all creditors; and it having been determined that the plan meets each of the requirements of 11 U.S.C. sec. 1325(a);

**It is ORDERED that**:

(1)     the Plan as filed or modified is CONFIRMED.
(2)     Upon entry of this order, all property of the estate shall revest in the Debtor(s). Notwithstanding such revesting, the Debtor(s) shall not encumber, refinance, sell or otherwise convey real estate without first obtaining an order of approval from this Court.
(3)     All funds received by the Chapter 13 Trustee on or before the date of an order of conversion or dismissal shall be disbursed to creditors, unless such disbursement would be *de minimis* , in which case the funds may be disbursed to the Debtor(s) or paid into the Treasury registry fund account of the Court, at the discretion of the Trustee.  All funds received by the Chapter 13 Trustee after the date of the entry of the order of dismissal or conversion shall be refunded to the Debtor(s) at their address of record.
(4)     Other provisions:


Dated: Nov 13 2013                          /s/ Keith L. Phillips
                                            _____
                                            United States Bankruptcy Judge
RICHMOND, VIRGINIA

I ASK FOR THIS:
                                            NOTICE OF JUDGMENT OR ORDER
                                            Entered On Docket Nov 13 2013

/s/Robert E. Hyman
Robert E. Hyman
Standing Chapter 13 Trustee
P. O. Box 1780
Richmond, Virginia 23218-1780
(804) 775-0979
VSB #5578

**PARTIES TO RECEIVE COPIES:**
**Andrew P. Gunter**
9011 Willow Brook Drive
Henrico, VA 23228

# <u>EXHIBIT 10</u>

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Eastern District of Virginia | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:<br><br>Andrew P. Gunter | Case Number:<br><br>13-34737-KLP | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Leslie Beth Stanford-Tubb

**COURT USE ONLY**

Name and address where notices should be sent:
c/o Roy M. Terry, Jr., Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998

Telephone number: (804) 648-1636    email: rterry@sandsanderson.com

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):
4674 Rollingwood Lane
Glen Allen, VA 23060

Telephone number: (804) 349-8594    email: lbtubb@henrico.k12.va.us

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $_____350,617.84

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❏ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**    Final Decree of Divorce - Support and Property Settlement
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❏ Real Estate  ❏ Motor Vehicle  ❏ Other
**Describe:**

**Value of Property: $**_____

**Annual Interest Rate**_____% ❏ Fixed  or  ❏ Variable
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

Basis for perfection:_____

Amount of Secured Claim:    $_____

Amount Unsecured:    $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☑ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____80,041.00

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.     ☐ I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor,     ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                      or their authorized agent.               (See Bankruptcy Rule 3005.)
                                                                      (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Leslie Beth Stanford-Tubb
Title:
Company:                                                     /s/ Leslie Beth Stanford-Tubb                         01/08/2014
Address and telephone number (if different from notice address above):     (Signature)                              (Date)

Telephone number:                        email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

**In re: Andrew P. Gunter**
**Case No. 13-34747-KLP**

**Attachment to Proof of Claim**

This Proof of Claim is filed as an unsecured claim without prejudice to the right of the claimant to amend.

**Priority Claim**

| Item | Amount |
|---|---|
| 55% of non-covered out of pocket medical expenses for children | $226.00 |
| Housing costs incurred due to Debtor's failure to pay support obligation to provide housing for children until graduating from high school[1] | $73,815.00 |
| Attorneys' fees incurred for enforcement of divorce decree in bankruptcy (estimated) | $6,000.00 |
| **Total:** | $80,041.00 |

**General Unsecured Claim**

| Item | Amount |
|---|---|
| Value of real property lost due to Debtor's pre-petition breach of obligation to maintain payments on property through satisfaction of lien | $182,000.00 |
| 40% of student loans incurred by claimant for living expenses (total balance as of the date hereof $221,442.12) | $88,576.84 |
| **Total:** | $270,576.84 |

---

[1] Total included represents housing support costs for August 2013 and the duration of Debtor's plan (37 months at $1,995.00/month). Claimant intends to file a motion for relief from the automatic stay to pursue this support in the appropriate state court and will amend this proof of claim as appropriate. Debtor reserves all rights with respect to all claims to post-petition support obligations not included herein, including additional claims for housing support costs.

# EXHIBIT 11

# UNITED STATES BANKRUPTCY COURT
### Eastern District of Virginia
### Richmond Division

IN RE:  Andrew P. Gunter                                    Case number 13-34737

Debtor                                                              Chapter: 13

## OBJECTION TO CLAIM NO. 6
## AND NOTICE OF OBJECTION TO CLAIM

The Debtor Andrew P. Gunter, through counsel, hereby objects to Claim No. 6 of Leslie Beth Stanford-Tubb ("Stanford-Tubb") alleged in parts as a priority claim in the amount of $80,041.00 and as a general unsecured claim in the amount of $270,576.84 on the following grounds:

| Claim Filed As | Claim No. | Claimant | Objection and Discussion |
|---|---|---|---|
| PRIORITY | 6 | Leslie Beth Stanford-Tubb c/o Roy M. Terry, Jr. Sands Anderson PC P.O. Box 1998 Richmond, VA 23218-1998 | Stanford Tubb's Proof of Claim fails to properly attach evidence of the claim based on a writing or contract in violation of Federal Rule of Bankruptcy 3001(c) and fails to specifically itemize alleged "housing costs incurred …" and is therefore not entitled to *prima facie* status.  Strict proof of any and all alleged "housing costs" is hereby requested and required.  Additionally, the Proof of Claim appears to allege claims related a general, unsecured, nonpriority Property Settlement Debt which is dischargeable in accordance with 11 U.S.C. § 523(a)(15) and 11 U.S.C. § 1328(a) and thus any such claims are not entitled to priority treatment and status under the U.S. Bankruptcy Code. Furthermore, any alleged tertiary "housing costs incurred" which are alleged to be related to the Debtor's nonpayment of a dischargeable, general, unsecured, nonpriority debt and which are related to the Claimant's voluntary move should be disallowed in full. Likewise, attorneys' fees related to the alleged "enforcement" of the same dischargeable, general, unsecured, nonpriority debt are not entitled to priority treatment and should be disallowed in full.  Lastly, Debtor's Schedule E lists medical expenses as "disputed" and in the amount of $126.00. Stanford Tubb's Proof of Claim fails to properly itemize alleged "non-covered out-of-pocket medical expenses …" and fails to attach supporting documentation in compliance |

| | | | |
|---|---|---|---|
| | | | with Federal Rule of Bankruptcy 3001 and is therefore not entitled to *prima facie* status. Strict proof of any and all alleged "non-covered out-of-pocket medical expenses …" unpaid as of the Petition date and as of the present date is requested and required. As a result the Stanford Tubb's Proof of Claim alleged as a Priority Claim in the amount of $80,041.00 should be disallowed in full, or in the alternative, upon proof of the alleged debt by Stanford-Tubb, allowed as a priority claim in the amount of $126.00 or $226.00 only. |
| GENERAL UNSECURED | 6 | Leslie Beth Stanford-Tubb c/o Roy M. Terry, Jr. Sands Anderson PC P.O. Box 1998 Richmond, VA 23218-1998 | Stanford Tubb's Proof of Claim fails to properly attach evidence of the claim based on a writing or contract in violation of Federal Rule of Bankruptcy 3001(c) and fails to specifically itemize the alleged claim "40% of student loans … total balance … $221,442.12" and is therefore not entitled to *prima facie* status. Strict proof of any and all student loan balances as of the date of the filing of the Debtor's Petition is hereby requested and required. Additionally, Stanford Tubb's Proof of Claim fails to properly attach evidence of the claim based on a writing or contract in violation of Federal Rule of Bankruptcy 3001(c) and fails to specifically itemize the alleged claim "[v]alue of real property lost …" and is therefore not entitled to *prima facie* status. The Proof of Claim further fails to justify or support an amount of $182,000.00 for real property worth approximately $175,700.00 as of the date of the filing of the Petition and encumbered by a first deed of trust in the approximate amount of $166,483.41. Strict and forensic proof of any and all alleged "value of real property lost …" as of the date of the filing of the Debtor's Petition is hereby requested and required. Thus, upon strict proof of the exact balances of all student loans subject to the Divorce Decree entered by the Henrico County Circuit Court, Stanford-Tubb's Claim should be allowed as a general, unsecured, nonpriority claim to the extent of 40% of said combined balances. Stanford Tubb's Proof of Claim in the amount of $182,000.00 for "[v]alue of real property lost …" should be disallowed disallowed in full. |

WHEREFORE Debtor prays that Claim No. 6 of Leslie Beth Stanford-Tubb be disallowed in full as a priority claim except as to the proven and itemized amounts of non-covered out-of-pocket medical expenses for children to which referred above. Debtor further prays that Claim No. 6 of Leslie Beth

Stanford-Tubb be disallowed in full as a general unsecured claim except as to the proven and itemized amounts of 40% of the student loan debt to which referred above.  Any remainder of the claim as a whole should be disallowed in full.

Dated:  April 29, 2014                          Respectfully submitted

                                               Andrew P. Gunter

                                               By Counsel

By: /s/ Jason S. Greenwood
Jason S. Greenwood (#74941)
GREENWOOD LAW FIRM PC
1406 Princess Anne Street
Fredericksburg, VA 22401-3639
Tel. (540) 368-5888
Fax. (888) 580-8897
j.greenwood.@greenwoodlf.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT
## Eastern District of Virginia
## Richmond Division

IN RE:  Andrew P. Gunter                                        Case number 13-34737

Debtor                                                         Chapter: 13

## <u>NOTICE OF OBJECTION TO CLAIM</u>

The Debtor Andrew P. Gunter, by and through counsel, have filed an objection to your claim in this bankruptcy case.

**<u>YOUR CLAIM MAY BE REDUCED, MODIFIED OR ELIMINATED.</u>  You should read these papers carefully and discuss them with your attorney, if you have one.**

If you do not want the court to eliminate or change your claim, then within **<u>30 days of the service of this objection</u>**, you or your attorney must:

Pursuant to Local Bankruptcy Rule 3007-1, file with the Court, and serve a copy on Debtor's counsel, at the addresses shown below, a **<u>written</u>** response to this objection and a request for a hearing.  **Unless a written response is filed and served by the date above-specified, the Court may decide that you do not oppose the objection to your claim, treat the objection as conceded, and enter an order granting the requested relief without a hearing**.  If you mail your response to the Court for filing, you must mail it early enough so the Court will **<u>receive</u>** it on or before the date stated above.

Clerk of Court                                        Jason S. Greenwood, Esquire
United States Bankruptcy Court                        Greenwood Law Firm PC
701 East Broad Street, Suite 4000                     1406 Princess Anne Street
Richmond, VA 23219                                    Fredericksburg, VA 22401

If you or your attorney do not take these steps, the Court may decide that you do not oppose the objection to your claim, and the Court may enter an order granting the requested relief without a hearing.

Date: <u>April 29, 2014</u>                          /s/ Jason S. Greenwood

                                                     Jason S. Greenwood (VSB #74941)
                                                     GREENWOOD LAW FIRM PC
                                                     1406 Princess Anne Street
                                                     Fredericksburg, VA 22401-3639
                                                     Tel. (540) 368-5888;
                                                     Fax. (888) 580-8897

j.greenwood.@greenwoodlf.com
*Counsel for Debtor*

## Certificate of Service

I hereby certify that on April 29, 2014, I have mailed, hand-delivered or delivered via the Court's electronic case filing and noticing system a true copy of the foregoing Notice and Objection to Claim to the following:

**Robert B. Van Arsdale**
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219-1849

**Robert E. Hyman**
Ch. 13 Trustee
P.O. Box 1780
Richmond, VA 23219-1780

**Leslie Beth Stanford-Tubb**
c/o Roy M. Terry, Jr.
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998

/s/ Jason S. Greenwood

Jason S. Greenwood
GREENWOOD LAW FIRM PC
1406 Princess Anne Street
Fredericksburg, VA 22401-3639
Tel. (540) 368-5888
Fax. (888) 580-8897
j.greenwood.@greenwoodlf.com
*Counsel for Debtor*